# SOUTHERN BANK OF FULTON, Appellant, v. NICHOLS et al.

### Division Two, March 19, 1907.

1. **EQUITY: Submission of Issues to Jury: Peremptory Instruction.** The finding of the jury in an equity case is only advisory. The chancellor is not bound by it. Hence no error is committed in instructing the jury to find for defendant on all the issues submitted, if that is the finding the evidence authorizes, for that, in effect, is the chancellor's finding.

2. ————: **Chancellor's Finding: Appellate Practice.** While deferring somewhat to the chancellor's finding of facts in an equity case, the appellate court will review the evidence and determine for itself whether or not he came to the right conclusion therefrom.

3. **FRAUDULENT CONVEYANCE: Necessary Showing.** Before a creditor of the grantor in a deed can defeat the deed for fraud, he must show that it was made with a fraudulent intent, and that the grantee had notice of such intent when he accepted the deed. But while such intent must be proved, and can not be presumed, yet direct and positive evidence is not necessary to establish it. It may be inferred from facts and circumstances.

4. ————: **Facts in Evidence: Notice to Grantee.** One of the defendants and his brother borrowed of plaintiff bank $2,350 and executed their note therefor. Defendant at that time owned and resided on 140 acres of land, and the loan was made on the faith of his ownership of the land. After the note had run for several years and the bank wanted it settled, said defendant was in the bank to get the date and amount of the note, and was told by the bank that they wanted it settled, and he replied that, "We will attend to that all right in a short time." Soon thereafter he conveyed the land by a quitclaim deed to his four children, the other defendants, one of whom was a minor, for the recited consideration of $1,500, thereby rendering himself hopelessly insolvent. *Held*, that the conveyance was made for the purpose of defrauding plaintiff, and the taking by the children of the quitclaim deed constituted them purchasers with notice.

5. ————: **No Consideration.** A conveyance by a father to his minor son, whom the father owed nothing, the son paying the father nothing, is void as to the father's existing creditors.

6. ————: Insufficient Consideration. The conveyance by a father to his four minor children, to two of whom he owed nothing, to the other two of whom he owed $1,077, of land worth $2,766.66, in which he had a homestead, at a recited consideration of $1,500, the conveyance thereby rendering him insolvent, cannot be said to be supported by such an adequate consideration as to overcome the father's manifest intent to defraud his creditors.

7. ————: To Daughter: To Pay Debt to Husband. A quitclaim deed by a father to a daughter, in payment of money loaned by her husband, and in payment of work done by the husband on the father's barn while the daughter and her husband were living with the father, no showing being made of when the work was done or the money loaned or the value of the work or the amount of the loan, cannot be said to be supported by either an adequate or valuable consideration. Such evidence is too vague to be considered.

8. ————: Deposition of Grantee: Admission. The deposition of a grantee in the conveyance, being party to the suit, taken by the adverse party, is admissible in evidence as an admission, although the deponent is in court when the deposition is offered. But the deponent will thereafter be entitled to have the entire deposition read, or at least so much of it as bears on the question in regard to which he was interrogated.

9. ADMISSIONS OF PARTY: Witnesses. A party to a suit upon trial, although summoned as a witness by the adverse party, does not occupy the position of a witness not a party. The statements of the latter are only admissible for the purpose of contradicting or impeaching him, and then the usual foundation must be laid. But the statements of a party to the suit are admissible as original evidence against him.

Appeal from Callaway Circuit. Court.—*Hon. Robert McPheeters*, Special Judge.

REVERSED AND REMANDED.

*T. A. Boulware* with *D. P. Bailey* and *I. W. Boulware* for appellant.

(1) The issues formulated and submitted to the jury were illegal and erroneous. The second issue required the jury to find whether the conveyance was made to hinder, delay and defraud the grantor's credi-

tors, and if not made by R. H. Nichols to hinder, delay and defraud his creditors, to find for the defendants. R. S. 1899, sec. 3398; Baer, Seasongood & Co. v. Lisman, 85 Mo. App. 317; Rupe v. Alkire, 77 Mo. 641; Burgert v. Borchert, 59 Mo. 80; Crow v. Beardsley, 68 Mo. 435; Dunham v. Halberg, 69 Mo. App. 509. (2) In this case it is not a question of purpose and intent alone. If the effect of the transfer was to hinder, delay or defraud creditors, the same was void as to creditors. Cole Mfg. Co. v. Jenkins, 47 Mo. App. 664; Noyes v. Cunningham, 51 Mo. App. 194; Gens & Tiede v. Hargadine, 56 Mo. App. 245. (3) The instruction given to the jury by the court to find for the defendants on each of the issues was clearly illegal and improper. The jury had been chosen and qualified and issues submitted to them. Plaintiff had closed its case. Defendant offered no testimony. The demurrer to the testimony was improperly and erroneously given. This demurrer admits every fact which the jurors might infer, if the evidence were before them. Moore v. Railroad, 194 Mo. 1; Franke v. St. Louis, 110 Mo. 516; Bender v. Railroad, 137 Mo. 240. If plaintiff makes out a prima facie case, it should go to the jury. This is true however slight it may be, whether direct or inferential. Hughes v. Ellison, 5 Mo. 110; Emmerson v. Sturgeon, 18 Mo. 170. (4) The evidence was amply sufficient to authorize a finding for plaintiff. The evidence was substantial. The jury was taken on the court's own motion. The issues of fact were formulated and submitted to them by the court. They were in every sense competent to try the case; hence, we submit that same rules of law are applicable as in a suit at law. If the peremptory instruction given by the court to find for defendant would have been wrong in a suit at law, it was error in this case. (5) Although this may be an equitable proceeding, and the court may have the right to disregard the finding of the jury, after it called the jury, heard the evidence, directed the jury what verdict

to find for defendants on each issue—then adopted the verdict and based its judgment thereon, yet we can but conclude that the acts and rulings of the court develop the fact that the case was tried on a wrong theory.    (6) The fact that a part of the alleged consideration was invalid — a fraud against grantor's creditors — will taint the whole transaction and avoid the whole sale in favor of creditors.  Nattach v. Wylie, 25 Kan. 148; Hannah v. Finley, 33 Mo. App. 645; State ex rel. v. Hope, 102 Mo. 410; National Bank v. Fry, 168 Mo. 492; Kukendall v. McDonald, 15 Mo. 420; National Tube Works Co. v. Machine Co., 118 Mo. 365; Seger's Sons v. Thomas Bros., 107 Mo. 635.    (7)    If deed is voluntary as to one of the grantees, it is fraudulent as to grantor's creditors.  Patton v. Bragg, 113 Mo. 595; Snyder v. Free, 114 Mo. 360; Bank v. Fry, 168 Mo. 520; State ex rel. v. Hope, 102 Mo. 410.    (8)    Where a father strips himself of everything he owns that·is subject to execution when he is indebted, and conveys his property to his children on an alleged payment of vague and uncertain claims for services rendered to him by his children years before, it is a strong and fair circumstance to be considered in determining the bona fides of the transactions.  Mason v. Perkins, 180 Mo. 707; Robinson v. Dryden, 118 Mo. 534; Hardware Co. v. Riddle, 84 Mo. App. 275; Burgert v. Borchert, 59 Mo. 80.    (9)    The deed being voluntary—and without a valuable consideration—the grantor being heavily in debt—insolvent—was void and fraudulent as to his creditors.  This is true, whether such was known to the grantees or not.  Shaw v. Tracy, 83 Mo. 224; Needless v. Ford, 167 Mo. 495; Worrill v. Kilner, 113 Ill. 418.    (10)    There was no valuable consideration for the conveyance from R. H. Nichols to his children; said children had knowledge of all the facts connected with the transaction.  They took from him a conveyance to all said 140 acres, stripped him of the last dol-lar, well knowing he was largely indebted to plaintiff

and had no property but the 140 acres of land with which to pay. Van Raalte v. Harrington, 101 Mo. 602; Goldsby v. Johnson, 82 Mo. 602; Donovan v. Dunning, 69 Mo. 436; Bohanuon v. Combs, 79 Mo. 305; Swinford v. Teegarden, 159 Mo. 635. (11) While a creditor has an absolute legal right in Missouri to prefer one of his creditors over another so long as he acts in good faith, he has no right to make an indebtedness to one creditor the means not merely of securing that creditor but of placing the surplus of his property over and beyond that security in the hands of such creditors in such a way as to put it beyond the reach of other creditors so as to hinder or delay in their lawful actions. McDonald & Co. v. Hoover, 142 Mo. 495. (12) It is settled law that when it appears upon the face of any conveyance or by facts and circumstances that it is a secret trust for the grantor, it will be declared to be void. McDonald v. Hoover, 142 Mo. 495.

*A. Finley* for respondents.

This was R. H. Nichols' homestead, valued at $1,-500, the commissioners gave him $300 exemption, making a total of $1,800. Did he have a right to sell it? And did his children pay him what the land was worth, or approximately what it was worth? If it was his homestead he had a right to sell it, and said sale was not fraudulent to creditors. Davis v. Land, 88 Mo. 438; Bank of Versailles v. Guthrie, 127 Mo. 189. The rule is that fraud, like any other fact, must be proved and cannot be presumed. The relationship of the parties to a conveyance charged to have been made in fraud of creditors and the insolvency of the grantor and the facts that the grantor continued to live on the farm after the transfer and that the consideration expressed in the deed was less than the value of the land, are not sufficient to show that the conveyance was fraudulent. Robinson v. Dryden, 118 Mo. 535. The evidence shows

that R. H. Nichols owed his son-in-law, Truitt, $300, his son, Hershel, $530 and his son, Shelt, $800, being a total amount of $1,630, in consideration of which he made a quitclaim deed to all of his children, William F. being included, it being understood among the children that they would adjust that between themselves. This does not show fraud, nor an intention to commit fraud, both of which must be proved in order to set aside a conveyance by deed. Gens & Tiede v. Hargadine & Co., 56 Mo. App. 245. It is well-established law in this State that an insolvent debtor or one in failing circumstances may, with an honest view to pay an honest debt, prefer one creditor over another, though the effect be to hinder and delay the other creditor. Hardware Co. v. Riddle, 84 Mo. App. 276. Where in a suit in equity to set aside a conveyance as having been made in fraud of creditors, issues are submitted to the jury and the charges made in the petition are not established by the weight of the evidence, the court may peremptorily instruct the jury to find for the defendant. Robinson v. Dryden, 118 Mo. 534; Snell v. Harrison, 83 Mo. 657. The court had a right to submit issues to a jury, a right to adopt or disregard the findings of the jury on the issues submitted to them. Robinson v. Dryden, 118 Mo. 534; Snell v. Harrison, 83 Mo. 657.

BURGESS, J.—This is a suit to set aside a quitclaim deed made by defendant R. H. Nichols to his children and codefendants, Berdina A. Truitt, Hershel I. Nichols, Richard S. Nichols and William F. Nichols, on the ground that the deed sought to be set aside was without consideration, and made with the intent to defraud plaintiff and hinder and delay it in collecting its debt, and that the said grantees accepted said deed with the intent and purpose of aiding the said R. H. Nichols in defrauding plaintiff, and hindering and delaying it in collecting its said debt.

The cause was tried at the May term, 1902, of the

Callaway Circuit Court, when the following issues of fact were submitted by the court to the jury:

"1. Was the deed from the defendant, R. H. Nichols, to the defendants, B. A. Truitt, H. I. Nichols, R. S. Nichols and W. F. Nichols, dated November 29, 1899, and conveying the lands described in plaintiff's petition, without any valuable consideration?

"2. Was said deed executed and delivered by the defendant, R. H. Nichols, fraudulently and with the intent to hinder, delay and defraud plaintiff?

"3. Was said deed received and accepted by the defendants, B. A. Truitt, H. I. Nichols, R. S. Nichols and W. F. Nichols, and by each of them, fraudulently and with the purpose and intent of defrauding plaintiff and for the purpose and intent of aiding the said R. H. Nichols in defrauding plaintiff and preventing plaintiff in collecting its said debts?"

At the conclusion of plaintiff's evidence, the court, at the request of defendants, gave the following peremptory instruction to the jury: "The jury are instructed, at the close of plaintiff's testimony, that under the pleadings and evidence, the verdict and findings must be for defendants, on all three of the issues submitted;" and the jury found accordingly. The court thereupon rendered judgment in favor of defendants and against plaintiff for costs, dismissing plaintiff's bill; from which judgment plaintiff appeals.

The following is a summary of the facts:

On the 6th day of October, 1894, the defendant, R. H. Nichols, and James I. Nichols, his brother, executed and delivered to plaintiff their promissory note for $2,350, due one day after date, with interest from date at the rate of eight per cent per annum. At the time of the execution and delivery of said note defendant R. H. Nichols was the owner of 140 acres of land in Callaway county, which said land, by quitclaim deed, dated November 29, 1899, he conveyed to his said children and codefendants for a stated consideration of

$1,500, his wife refusing to sign said deed. Upon suit brought for the payment of said note and interest due thereon, plaintiff recovered judgment against said James I. Nichols and R. H. Nichols, on the 22nd day of December, 1900, for the sum of $2,861.65 and costs, and by virtue of an execution issued thereunder the sheriff seized and levied on the said 140 acres of land. After the levy of said execution, and before the sale, the sheriff appointed three qualified commissioners, who assigned and set off to said R. H. Nichols, as a homestead, sixty acres of said land, and, in lieu of his exemptions as to personal property, ten acres of the said tract. The remaining seventy acres was sold by the sheriff at public sale, the plaintiff becoming the purchaser for $300, receiving the sheriff's deed therefor. At the time of the institution of this suit no part of the said judgment was paid save the said sum of $300.

Each of the three commissioners, James H. Ely, David Newsom and J. B. Gilpin, who set off the homestead of defendant R. H. Nichols out of the 140-acre tract, testified as to the value of the land. Ely testified that he was not well acquainted with the value of lands in the neighborhood of this 140 acres; that the sixty acres which they had set off as a homestead had the dwelling-house and other improvements thereon, and they set the value at $25 an acre; that the other ten acres set aside by way of exemptions was valued at $20 an acre. He stated that he did not look over the remaining seventy acres and could not estimate its worth. Newsom's testimony was to the same effect as regards the value of the land set out as a homestead, but he thought the seventy acres remaining over was poorer land, and worth about two or three dollars per acre. Gilpin testified that he did not value the land as high as Ely and Newsom did the day he was there, and he thought the tract of 140 acres was worth about $2,200. He also said that, four or five years before this trial, he bought 320 acres of land near

this 140 acres, and paid $3,150 therefor, or about $10 per acre. He thought that part of his land was about as good as Nichols' land.

Dr. J. H. Howard testified that he knew the land in controversy a long time, and that it was reasonably worth twenty-five, thirty or thirty-five dollars per acre.

C. W. Jameson, who was plaintiff's cashier at the time of the note transaction, testified that his information was that the land in question was worth between $3,500 and $4,000 and that the loan was made on the strength of that fact.

The statements of defendant R. H. Nichols, made some time before in answer to inquiries on an examination held before Judge John A. Hockaday touching his ability and means to satisfy the judgment against himself and J. I. Nichols, were read in evidence, the part relative to the making of the quitclaim deed and the consideration therefor being as follows:

"Q. When did you first conclude or determine to deed this land to your children? A. Well, I was in debt to my children, and they wanted a settlement, and I had no money to make any settlement with them with, and had to deed them the land to satisfy them.

"Q. What did you owe them for? A. I owed them for work they did, and for money I borrowed from them, and such things.

"Q. Call the children by name and state how much you owed to each. A. There was Shelton, for one, he lived there and worked on the farm for about seven or eight years, and I was to give him a part of the crops and so much a year for outside work, for attending to the farm, keeping up the fences, and doing work that is necessary on a farm.

"Q. Who is the next one? A. Then there is Hershel. We went into the grocery business together, and lost money on it, and he paid all the debts. And then I

borrowd money from him to pay the taxes, and was in debt to him in that way.

"Q. How much money did you borrow from him, and when was it borrowed? A. I don't know the amount exactly; I have not got it itemized.

"Q. About how much was it? A. It was somewhere between $300, $400 and $500, along there somewhere.

"Q. You borrowed that much money from him? A. No, sir; he paid the debts of the grocery firm for a part of it.

"Q. You say you borrowed money from your children. How much money did you borrow from him? A. I borrowed some money from him to pay the taxes.

"Q. How much money did you borrow from him? A. About $26 or $27.

"Q. Is that all the money you ever borrowed from him? A. He paid the note—we borrowed some money together and he paid the note off that we gave for it.

"Q. How much was that? A. He added it up and it came to between $400 and $500.

"Q. How old was he when you owed him that much money A. He was about twenty-seven or twenty-eight years old, somewhere in there. I don't know exactly how old he was then.

"Q. He was living with you most of the time on the farm down there, was he? A. No, sir.

"Q. Your son Shelton was the one who lived with you on the farm? A. Yes, sir.

"Q. Did you borrow any money from Shelton? A. No, sir.

"Q. You owed him only for work on the farm? A. Yes, sir; and I was to give him $100 a year for outside work he did.

"Q. What work was that you were to pay him $100 a year to do? A. Keeping up the farm, looking after the fences, waiting on me, hauling wood, and all such things as that that are necessary to do on a farm.

"Q. What is the name of the next child? A. Mrs. Truitt.

"Q. How much money did you borrow from her? A. I borrowed the money from her husband, Mr. Truitt, not from her. And he built a barn for me one summer, too.

"Q. When was it he built that barn for you? A. I could not say when it was.

"Q. Come as near to it as you can. When was it he built the barn for you? A. I don't remember what year it was; and could not give it.

"Q. Where was he living when he built that barn? A. He lived right there at the house.

"Q. Did you ever pay him anything before you made this deed to your daughter? A. No, sir.

"Q. Did he ever say anything to you about paying him before you made this deed to your daughter? A. No, sir."

Plaintiff offered in evidence the deposition of defendant W. F. Nichols, son of defendant R. H. Nichols, which was taken some days prior to the trial, and which plaintiff said was offered to prove certain admissions made by said W. F. Nichols relative to his interest in the land and the consideration paid his father therefor. Defendants objected to the introduction of the deposition on the ground that the deponent was present and within reach of the process of the court, and if plaintiff wished to make him its witness it could do so; which objection was sustained, and plaintiff excepted.

As the finding of the jury in chancery cases is only advisory, and the chancellor is not bound by it, there was no error committed by the court in instructing the jury to find for the defendants upon all three of the issues submitted, providing the finding was authorized by the evidence. [Robinson v. Dryden, 118 Mo. 534; Cox v. Cox, 91 Mo. 71.] In effect, this was the finding of the chancellor of his own motion, which finding

he had the authority to make. [Snell v. Harrison, 83 Mo. 654; Bevin v. Powell, 83 Mo. 365; Cox v. Cox, supra.] And while the finding of the chancellor in such cases will be deferred to somewhat, this court reserves the right to review the evidence, and to determine for itself whether the chancellor came to the right conclusion, under the evidence. [Snell v. Harrison, supra.]

It is well settled that before a creditor of the grantor in a deed can defeat the deed for fraud, it devolves upon him to show that it was made with a fraudulent intent, and that the grantee had notice of such intent when he accepted the deed. But while such fraud must be proved, and cannot be presumed, yet direct and positive evidence is not necessary to establish it. It may be inferred from facts and circumstances.

Now what are the facts and circumstances disclosed by the record in this case? At the time James I. Nichols and the defendant R. H. Nichols borrowed from the plaintiff the sum of $2,350, on October 6, 1894, and executed their note therefor, said R. H. Nichols was the owner of and resided upon the land in controversy, and the evidence shows that it was upon the faith of his ownership of said land, and his consequent ability to pay said note, that the loan was made.

After the note had been in the bank several years, plaintiff wanted it settled; and when R. H. Nichols was in the bank getting date and amount of the note, and was told by an officer of the bank that they wanted it settled, Nichols replied, "We will attend to that all right in a short time." But instead of settling the note in a short time, he soon thereafter, on the 29th day of November, 1899, conveyed all of his land by quitclaim deed to his children, Mrs. B. A. Truitt, H. I. Nichols, R. S. Nichols and W. F. Nichols, for the recited consideration of $1,500; which was much less than its value. By this conveyance said R. H. Nichols was rendered hopelessly insolvent. It also appears that

W. F. Nichols, one of the grantees named in the deed, was a minor at the time. From these facts and circumstances there is no escaping the conclusion that R. H. Nichols conveyed the land to his children with the intent and purpose of defrauding his creditor, the plaintiff in this suit.

Now, as to the question of notice to defendants, the grantees, they took under a quitclaim deed from their father, the grantor, which, under repeated rulings by this court, constituted them purchasers with notice. [Sharp v. Cheatham, 88 Mo. 498; Ridgeway v. Holliday, 59 Mo. 444; Stoffel v. Schroeder, 62 Mo. 147; Stivers v. Horne, 62 Mo. 473.]

Defendants' counsel, however, contend that the consideration paid to R. H. Nichols by his children, the grantees named in the deed, was valuable and adequate; and, it would appear, according to counsel's computation, that the grantor was paid more than the land was worth. However, there is nothing before us, save the testimony of the witnesses, from which to make our deductions.

Gilpin, one of the commissioners appointed to set out the homestead, testified that the 140 acres was, in his opinion, worth $2,200. Newsom stated that the sixty acres allowed R. H. Nichols for a homestead was valued at $25 an acre, and the other ten acres set out by way of exemptions, at $20 an acre. That is to say, the seventy acres, in his estimation, was worth $1,700. The remaining seventy acres he supposed was worth only two or three dollars an acre. According to Newsom's figures, then, the whole tract was worth about $1,900. Witness J. H. Howard, who knew the land well, testified that, in his judgment, the land "was worth $25 or $30 or $35 per acre." Taking the middle figure, or $30 per acre, as his estimate, the 140 acres would amount in value to $4,200. Witness Jameson's information was that the tract was worth $3,500 or

$4,000, but this shall not be considered, as he was an interested party, and his information was mere hearsay. Now, taking the estimates of Gilpin, Newsom and Howard, and adding them together, we have $8,-300, dividing the same by 3, we have $2,766.66 as the average value of the land.

There was no testimony offered, save that of R. H. Nichols, regarding the consideration paid for the deed to the land. He said that his son, Shelton, lived with and worked for him on the farm some seven or eight years, and that he promised him $100 a year for his work; that he borrowed $27 from his son, Hershel, and that the latter paid off a partnership debt "somewhere between $300, $400 and $500," which debt was the result of their going "into the grocery business together, and losing money on it." These items represent the only money consideration we have any account of. His daughter, Mrs. Truitt, loaned him no money; but he said that he borrowed some money from her husband, and that the latter built a barn for him one summer while he was living with him. This is altogether too vague to be considered. He did not say when the money was borrowed or the barn was built. Besides, he denied that Mr. Truitt, his daughter's husband, had ever said anything to him about compensation before he made the deed wherein his said daughter is named as one of the grantees. Neither did the defendant, R. H. Nichols, say that his youngest son, W. F. Nichols, paid him anything whatever as consideration for said deed.

If the debt paid by Hershel Nichols was $500, and it was a partnership debt, he must bear his own share thereof, and not charge it all against his father. Taking half, or $250, as the sum owing Shelton Nichols by his father on this account, and adding thereto the $27 borrowed, as before stated, Shelton's part of the consideration for the deed is $277. Said sum being supplemented by the eight hundred dollars supposed to be owing Hershel Nichols by his father for his eight

years' services on the farm, we have $1,077 as the total consideration for the deed, or a little more than one-third of the estimated value of the land.

There was no settlement between R. H. Nichols and his children for the purpose of ascertaining and determining the sums due them, respectively, and which, according to the evidence, was mere matter of conjecture. In fact, there was no evidence whatever that R. H. Nichols owed his son, W. F. Nichols, anything, or that the latter paid any consideration for his interest in the land; so as to him the deed was voluntary, and clearly in fraud of the creditor, the plaintiff in this action.

In Needles v. Ford, 167 Mo. 495, it is held that a deed is a voluntary deed, and fraudulent in law and void as to existing creditors, when made by an insolvent or by one rendered insolvent by the very act of conveying his property. And this is true although the grantee may have been ignorant of the insolvency of the grantor and ignorant of the fraud intended and committed. [Shaw v. Tracy, 83 Mo. 224.]

Defendants, the grantees, are charged in the petition with a knowledge of the fraudulent purpose of their father in conveying the land to them; yet none of them testified as parties or witnesses in this case. It is manifest from this and the other circumstances mentioned that the purpose and intent of the grantor in conveying the land to his children was to defraud his creditors, and that the grantees in the deed had notice of and were parties to the fraud.

The declarations and admissions of a party to a lawsuit, against his interest, are always admissible in evidence in favor of the adverse party, although made in a deposition taken by such party, and the party making the statement or admission, as it may be, is in court at the time the parts of the deposition containing such statement or admission are offered in evidence. But the party making the statement or ad-

mission would thereafter be entitled to have the entire deposition read, or at least as much of it as has any bearing upon the question in regard to which he has been interrogated. A party to a suit upon trial, although summoned as a witness by the adverse party, does not occupy the same position as a witness not a party to the suit. The statements of the latter are only admissible for the purpose of contradicting or impeaching him, in order to do which the usual foundation must be laid by calling his attention to the time when and place where made, etc., and if he denies having made such statements, then evidence is admissible to show that he did. With respect to the statements of a party to the suit, however, his statements are admissible against him as original evidence, and the court, therefore, erred in ruling out the deposition of defendant W. F. Nichols taken some time before the trial, and which was offered by plaintiff to prove certain admissions made by said defendant relative to his interest in the land and the character of the consideration paid his father therefor.

For the reason stated the judgment is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed. All concur.