Mrs. D. E. Joyce, Respondent, v. Joun Biring, Sr., and John Biring, Jr., Appellants.*—43 S. W. (2d) 845.

St. Louis Court of Appeals. Opinion filed December 8, 1931.

*Leahy, Saunders & Walther* for appellants.

*Mark D. Eagleton* and *Allen, Moser & Marsalek* for respondent.

NIPPER, J.—This is an action for damages for personal injuries sustained by plaintiff on a Sunday afternoon, on May 9, 1926, as the result of a collision between an automobile driven by John Biring, Jr., and one driven by plaintiff's husband, John Joyce, at the intersection of Lillian avenue and Davison avenue, in the city of St. Louis.

Plaintiff recovered judgment against John Biring and John Biring, Jr., and defendants have appealed.

The petition charged that John Biring, Jr., was operating the automobile at an excessive rate of speed; that he failed to stop or give any signal or warning of approach; that he failed to stop, slacken the speed of, turn or swerve the automobile; that he failed to exercise due care to discover the automobile in which plaintiff was riding, and failed to have the automobile under such control that it could be readily and easily stopped at the first appearance of danger; and negligence under the humanitarian doctrine.

The answer, after a general denial, alleged that at the time of the collision, plaintiff was engaged in a joint mission or enterprise with

her husband, who was driving the automobile in which she was riding, and that the injuries were the result of contributory negligence of the husband who was driving at an excessive rate of speed; that he failed to stop; that he failed to turn or swerve the automobile which he was driving; that he failed to give the right of way to the automobile being driven by defendant John Biring, Jr.; that he failed to have his automobile under control so that it could be readily stopped upon the first appearance of danger; and that he failed to keep as near the right-hand curb of Davison Avenue as possible.

The accident occurred; as stated in the petition, at the intersection of Lillian avenue and Davison avenue, in the city of St. Louis. Lillian avenue runs east and west; Davison avenue runs north and south. The plaintiff lived on Davison avenue, a block or two south of the point of collision, and defendant John Biring owned a shoe store at 5005 North Union avenue, and lived upstairs over his store with his wife and two sons. One of the sons was the defendant John Biring, Jr., who at the time was about eighteen years old. The elder Biring was a shoemaker, and had been at this location about twenty years. At the time of the collision, according to plaintiff's testimony, the Joyce automobile was moving northwardly on Davison avenue and the defendant's automobile was going west on Lillian avenue. Lillian avenue is approximately thirty-seven feet wide, and Davison avenue twenty-seven feet. As the Joyce automobile approached Lillian avenue, plaintiff's husband slowed down almost to a stop and looked both east and west. At that time, according to the testimony of plaintiff, the Biring automobile was about three-quarters of a block to the east. She saw the Biring automobile again when it was about half a block away. When their car had crossed the intersection and was on the north side of Lillian avenue, the Biring automobile struck it in the rear. She testified that her husband sounded his horn, but that she heard no horn sounded by young Biring who was driving the Biring automobile. She thought the Biring automobile was coming about forty or forty-five miles an hour; that her husband was going about ten or twelve miles an hour.

The husband, Mr. Joyce, testified that he saw the Biring automobile three-quarters of a block away when he started across Lillian avenue. He looked east again when the rear end of his car was about the center of the street and saw the Biring car about fifty feet away coming directly at him, at the rate of forty-five miles an hour. It was running within about four feet of the north curb of Lillian Avenue. Mr. Joyce attempted to accelerate the speed of his car to escape from the path of the oncoming Biring car, and all of his car except about three feet was north of the roadway of Lillian avenue when the Biring car struck it.

John Biring, Jr., who was driving the Biring car, testified, on direct examination, that as he neared the intersection he looked both to the left and right and saw no traffic coming and kept on going, and then all of a sudden something black appeared in front of him. It seemed as though it was directly in front of him, approximately one foot away. He tried to swerve out of the way and applied his brakes. The other car was moving fast. It appeared seemingly from nowhere. His right front fender hit the rear fender of the Joyce car and pushed it up against a fire plug at the west side of the intersection. He struck the rear twelve inches of the Joyce machine. At that time the right-hand side of the Joyce machine was within eight feet of the east side of Davison Avenue. The Joyce machine had gone forty-six feet across the intersection. The Biring machine was eight feet in the intersection when the collision occurred.

The principal controversy in this case hinges on the question of whether or not young Biring was acting as agent for his father at the time the accident occurred. It is defendant's contention that young Biring had been refused the automobile on the evening in question, and after such refusal had got the key which was hanging up in the store, and taken the car out without his father's knowledge and consent. The evidence on the part of the plaintiff with respect to this matter appears, first, from the testimony of Mrs. Joyce, the plaintiff, who testified with respect to certain admissions made by John Biring, Sr., to her about two weeks after the accident, when she had come home from the hospital. She testified that at that time the elder Biring visited her in her home; that he asked her how she was getting along, and she told him a little better. He then informed her that he was glad she was getting better. He then asked her if all the children were home. She told him that two were still in the hospital. He then informed her that he was sorry that it all happened, that he and Mrs. Biring had sent the boy to deliver some shoes to a customer who had bought them on Saturday before and called him up and told him they would like to wear these shoes in the afternoon, and he had sent the boy to deliver them, and that she shouldn't worry, because he had his car insured. At that point counsel for defendants objected, and asked for the discharge of the panel. The objection was that it was a voluntary statement of the witness, and not responsive, and was made for the purpose of prejudicing the minds of the jury. This objection was overruled.

At the time Mrs. Joyce had the conversation with the elder Biring, he was at her home, and there was no one present, but the two. She was very sick at the time, and was in constant pain. She had no other conversation with the elder Biring. After these statements he walked out of the room. It appears that some time later in a deposition young Biring stated that he had taken the car out against

his father's wishes, and that his father knew nothing about it, and that he was not on any mission for his father, nor had he delivered any shoes, and did not have any shoes in the automobile. After young Biring had so testified in his deposition, plaintiff's husband, Mr. Joyce, and his daughter went to see the elder Biring as to how and why his son happened to make such a statement in his deposition, which was directly contrary to what the elder Biring had told plaintiff. At that time Mr. Joyce said the elder Biring told him not to mind the deposition that the boy had made, that he had been over and seen Joyce's wife, that the insurance company was fighting the case, and that was the reason the boy had made that statement. This testimony was objected to at the time.

At the time Joyce, the husband, visited the elder Biring he said that Biring was behind the shoe counter, and described the situation in the store at the time. The daughter, Mary Ellen Joyce, testified that she was with the father at the Biring store, and that she heard her father ask the elder, Biring if he didn't remember the fact that he had gone down and told her mother that he had let young Biring have permission to use the car to deliver a pair of shoes for him that evening. She said that the elder Biring stated to her father that the boy did have permission to drive the car to deliver the shoes, and stated that she should not mention the fact that he had made that admission, that the insurance company was fighting the case, and that if that was let out it would get him in bad, and that the Joyces should not mention it if they could help it. This testimony was also objected to.

At the beginning of the *voir dire* examination of the jury panel, plaintiff's counsel asked defendants' counsel whether he was representing the Western Automobile Insurance Company, and whether the company, through its agents, investigated the case and handled the defense. Counsel for defendants admitted that the Western Automobile Insurance Company had a policy of liability insurance protecting the elder Biring; that there was none covering John Biring, Jr., or Mrs. Biring; and objected to any questions being asked any member of the panel as to any interest in any insurance company, or the Western Automobile Insurance Company; that counsel was appearing for the Western Automobile Insurance Company on behalf of the elder Biring only, and represented the other defendant personally. The court then permitted counsel for plaintiff to ask the general question collectively. Counsel for plaintiff then proceeded to examine the jury, over objections of defendants' counsel, with respect to their interest, if any, in the Western Automobile Insurance Company, and of their acquaintance with a certain representative of said company.

In the discussion of this case it will be necessary to refer to other evidence, which we will do at a more appropriate time.

The first assignment of error urged in this court as a ground for reversal is that there' was not sufficient evidence of the agency of John Biring, Jr., for his father, to take the case to the jury as to the elder Biring, because the testimony of the plaintiff and her husband and daughter with respect to the alleged statements of the elder Biring, that he had sent his son to deliver a pair of shoes, was insufficient to raise an issue of agency, and that the admission of such testimony was error because it was highly prejudicial.

We can see that, perhaps, it was prejudicial, but we do not think its admission was error, or that it was insufficient to establish agency. If the testimony of plaintiff be true, and the jury had a right to believe it, the conduct of the elder Biring was very peculiar, to say the least, in this case. He stated freely and voluntarily, without any solicitation or question being asked, that he had sent his son on this occasion to deliver a pair of shoes to a customer who had purchased them the day before. He also stated to plaintiff's husband and daughter, in explanation of the boy's deposition, that his son gave his deposition in the manner in which he did, and testified that he had taken the car out against his father's wishes, because of the fact that it would be displeasing to the insurance company if they found out otherwise, and then restated the fact that the boy had gone to deliver the shoes, just as he had told the plaintiff in the first instance. Counsel for defendants cite some cases from foreign jurisdictions, which it is claimed is authority for the statement that these admissions are not sufficient within themselves to take the question of agency to the jury. The admission of a party to an accident that he was to blame, or that he is liable under the law, may. be a mere conclusion, but the admission of the elder Biring in this case was an admission of a fact, which, if true, clearly made him liable, as well as his son. These declarations of the Elder Biring were made by him against his interest, and were sufficient within themselves to create liability, or at least make it a jury question. The mere fact alone that it may be prejudicial is no ground or reason for reversing the judgment. This court stated, in Pinteardd v. Hosch, 233 S. W. 81: "Admissions of a party to a suit are as competent as any other form of evidence, and may be used as original testimony, and a cause of action may be proven by evidence of admissions on the part of the party sought to be held liable." It is true that the elder Biring denied that he made the statements or the admissions alleged by plaintiff and her husband and daughter, but whether he made them or not was a question for the jury to determine. There is no merit in this assignment. [Black v. Epstein,

221 Mo. 286, 120 S. W. 754; Kirkwood v. Van Ness, 61 Mo. App. 361; Bank v. Nichols, 202 Mo. 309, 100 S. W. 613.]

It is also insisted that the repeated attempt of counsel for plaintiff during the taking of testimony, during his argument, and during the *voir dire* examination, to inject insurance into the case showed lack of good faith, and that the defendants were entitled to an instruction from the court, directing the jury to disregard any reference to insurance in considering the case, and that the court erred in refusing defendants' request for such instruction. We do not think that this assignment is well taken. Among the cases cited in support of this contention, is the case of Trent v. Lechtman Printing Co., 141 Mo. App. 437, 126 S. W. 238, and Chambers v. Kennedy (Mo.), 274 S. W. 726. The doctrine in Trent v. Lechtman Printing Co., supra, and the rule therein announced with respect to these matters, has been overruled, in substance, by many subsequent decisions of both the Supreme and Appellate Courts of this State, and much of what was said in Chambers v. Kennedy, supra, was overruled by our Supreme Court in the case of Smith v. Star Cab Co., 19 S. W. (2d) 467, and this court and the Supreme Court have held that the plaintiff is entitled to qualify the jurors as to their relations, if any, with the insurance companies interested in the result of the trial, and the plaintiff will not be denied this right merely because the insurance policy covers only one of the defendants. [See Malone v. Small (Mo. App.), 291 S. W. 163, and Smith v. Star Cab Co., supra.]

It is also insisted that the court erred in admitting the testimony of plaintiff's husband, that the elder Biring told the witness that the insurance company was fighting the case, for the reason that said statement was not responsive to the question asked, was unnecessary, and prejudicial. Defendant John Biring was making a statement to the plaintiff's husband as to why the son had made the statements he did in his deposition. The record discloses that the elder Biring had been to visit the office of the insurance company on several occasions, talked to its representative, and then changed his story as to the son being on a mission for him to deliver shoes. We appreciate the rule that it is error to permit counsel for plaintiff to instill into the minds of the jurors that the defendant is not really interested in the outcome of the case, and where it appears such conduct on the part of plaintiff's counsel is done with the purpose and object in view of unfairly injecting insurance into the case, we do not hesitate to reverse; but the facts of this case are very unusual, and the testimony introduced with respect to insurance in this case, we think, was fair, warranted, and justified by the action and conduct of the defendants.

Counsel for plaintiff in his closing argument made reference to the fact that the elder Biring had gone down to the insurance company's office, and when objection was made, he again stated that the case was full of testimony with reference to insurance, and that the question of insurance seemed to be sacred in the case, and that you could not touch it without some one yelling. It is insisted that this argument constituted reversible error, but, as shown by a reference to the facts of this case heretofore made, we do not think this argument constituted reversible error. The question of insurance was injected into this case by defendants' counsel, and if the testimony was properly admitted, plaintiff's counsel had a right to comment upon it. Courts have frequently reversed cases for improper argument of counsel, as where counsel undertake to state as facts matters not in evidence, but counsel in argument certainly have a right to assail the credibility of witnesses, their conduct upon the stand, and to draw proper illustrations, if they have the genius and ability to do so, and should not be penalized for so doing. [See Davis v. Wells (Mo. App.), 27 S. W. (2d) 714.]

It is next insisted that the court erred in giving the jury plaintiff's instruction No. 1, because the instruction directed the jury to find against both defendants, if they found the facts hypothesized, and did not tell them that they might find in favor of the elder Biring and against defendant John Biring, Jr. That is true, but plaintiff was not required to submit the liability of these defendants separately. This was done by instruction No. 7, given for defendants, whereby the jury were told that if John Biring, Jr., was driving the automobile for his own purpose and was not acting for and on behalf of his father, then the plaintiff could not recover against the elder Biring.

There are further objections made to the instruction, as well as to instruction No. 2, given on behalf of plaintiff. We have examined the instructions carefully with respect to the objections urged against them, and we find there is no substantial merit to these objections.

This case was fairly tried and submitted, and no reversible error appears in the record. The judgment is, accordingly, affirmed. *Becker, J.,* concurs; *Haid, P. J.,* not sitting.