BUTLER STATE BANK, Appellant,

v.

D & G CONSTRUCTION CO., INC.,
Eugene Buzz Davis and Louise
Davis, Respondents.

No. WD 33544.

Missouri Court of Appeals,
Western District.

Aug. 2, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Sept. 28, 1983.

Application to Transfer Denied
Nov. 22, 1983.

John J. Williams III and James H. Bernard, Jr. of Slagle & Bernard, P.C., Kansas City, for appellant.

C.E. Weedman, Jr. of Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondents.

Before TURNAGE, P.J., and DIXON, PRITCHARD, MANFORD, KENNEDY, NUGENT, and LOWENSTEIN, JJ.

MANFORD, Judge.

This is an action to recover monies claimed due upon promissory notes and to set aside a conveyance of farm property. The judgment is affirmed in part and reversed in part.

The judgment entered herein resulted from the combined rulings of the trial court and a jury verdict. This cause originated under a multiple count petition (seven

counts), asserting claims against the respondents in varied capacities. Prior to addressing the points on this appeal and for purposes of clarification, discussion is first focused upon six counts of the petition (Count VII severed as noted infra),[1] inclusive of the identity of the parties, consideration of pertinent evidentiary matters, the jury verdict, and the rulings of the trial court. Other factual matters, if any, relative to the disposition of the points on appeal, are developed in the discussion of those points.

Appellant, Butler State Bank, (hereinafter referred to as Butler) was the original plaintiff. In Count I of its multiple count petition, Butler sought recovery of $17,000, plus interest, as the claimed balance due under a promissory note (original face amount of the note was $26,000 plus interest) dated September 13, 1979. Recovery was sought against the D & G Construction Co., Inc. (hereinafter D & G) as maker of the note, and against defendants Charles Galloway, Verna Galloway, Buzz Davis, and Louise Davis in their capacities as statutory trustees of D & G.[2] On this count, the trial court directed a verdict in Butler's favor and against D & G and Buzz Davis (as trustee for D & G) in the sum of $17,000, plus interest in the sum of $3,824, and the sum of $3,500 for attorney fees. The court took no action against Charles Galloway, because he had filed his petition in bankruptcy and a stay order had been issued by the bankruptcy court. The court found, upon the evidence and as a matter of law, that Louise Davis and Verna Galloway were not statutory trustees of D & G. No appeal was taken from this portion of the judgment.

Under Count II, Butler sought recovery of the $17,000 (under Count I *supra*) against defendant Buzz Davis in his capacity as guarantor of the note executed by D & G under Count I. The trial court direct-

ed a verdict in Butler's favor and against defendant Buzz Davis as guarantor in the sum of $17,000, plus interest in the sum of $3,824.30, plus $3,500 for attorney fees. No appeal was taken from this portion of the judgment.

Under Count III, Butler sought recovery against defendant Louise Davis in her capacity as guarantor of the note referenced within Count I. The trial court directed a verdict for defendant Louise Davis. Butler has appealed from this portion of the judgment. Discussion of the pertinent facts is found infra, relative to the disposition of this point on appeal.

Under Count IV, Butler sought recovery of the sum of $70,000, plus interest, on a promissory note dated October 18, 1977 against defendant Charles Galloway as co-maker of the note. The trial court, in its judgment, acknowledged the stay order from the federal bankruptcy court and took no action on this count. No appeal was taken from this portion of the judgment.

Under Count V, Butler sought recovery of the sum of $70,000, plus interest, on a promissory note dated October 1, 1979 against defendant Buzz Davis as maker of the note. The trial court directed a verdict in favor of Butler and against defendant Buzz Davis in the sum of $70,000, plus interest in the sum of $17,335.07, and $3,500 for attorney fees. No appeal was taken from this portion of the judgment.

Under Count VI, Butler sought recovery of the sum of $70,000, plus interest, on the promissory note within Count V against defendant Louise Davis in her capacity as guarantor of the note. Butler moved for a directed verdict upon all counts of its petition, including Count VI. The trial court overruled Butler's motion and in addition to the directed verdicts discussed above, submitted the issue of guaranty by Louise Davis on the October 1, 1979 note (Count VI)

---

1. By court order, appellant's claim to set aside the conveyance (Count VII of appellant's petition) was severed, and a separate trial of that issue was ordered. That claim is still pending. Severance was ordered because the issue was not triable before a jury. The judgment ap-

pealed from was designated final for appeal. Rule 81.06.

2. The charter and certificate of D & G Construction Co., Inc. were forfeited by order of the Missouri Secretary of State on January 1, 1980.

to the jury. The jury returned its unanimous verdict for defendant Louise Davis. Butler has appealed from this portion of the judgment. Discussion of the pertinent facts is found infra, relative to the disposition of this point on appeal.

After entry of judgment in accordance with the above results, Butler filed its motion for judgment N.O.V., in accordance with its motions for directed verdict at the close of its evidence and at the close of all the evidence, or alternatively for a new trial. This appeal followed the overruling of those motions.

In its point (1), Butler, in summary, charges that the trial court erred in overruling its motion for directed verdict under Count III of its petition. By its motion, Butler sought to have Louise Davis, as a matter of law, declared the guarantor of the note executed by D & G in the sum of $26,000, dated September 13, 1979, and to secure judgment against Louise Davis in the sum of $17,000, plus interest and attorney fees. It is noted that the trial court, under Count I and Count II, directed a verdict for Butler against D & G and Buzz Davis upon said note. On this count III, however, the trial court overruled Butler's motion and directed a verdict in favor of Louise Davis.

Butler contends that Louise Davis was the guarantor of this note, and that evidence upon the record proved this as a matter of law. At trial, Butler introduced a document (dated August 18, 1956) executed by Louise Davis to the favor of Butler, which was a guaranty to Butler for the granting of credit, including loans, to her husband, Buzz Davis. Evidence relative to the financial dealings between Buzz Davis and Butler at the time the guaranty was executed revealed that Buzz Davis borrowed $1,000 from Butler.

The evidence further revealed that in 1977 Buzz Davis and Charles Galloway formed a construction business, and incorporated it as D & G Construction Co., Inc. Buzz Davis and Charles Galloway borrowed an initial sum of $10,000 to operate D & G. While Louise Davis and Verna Galloway were officers and directors of D & G, in reality neither had anything to do with the operation of D & G. Through D & G, Buzz Davis and Charles Galloway did considerable business with Butler. Buzz Davis estimated the figure to be around $160,000. Payments and borrowings occurred from 1977 through early 1979. Buzz Davis and Charles Galloway got into a dispute, and Charles Galloway formed a separate company. Charles Galloway then filed his petition in bankruptcy.

Under this point (1), Butler contends that the guaranty executed by Louise Davis on August 18, 1956 remained in full force and effect as of September 13, 1979, the date of the note executed by D & G (Count I) and guaranteed by Buzz Davis. Butler contends that since Louise Davis issued her guaranty on behalf of her husband, Buzz Davis (August 18, 1956), and since her husband was the guarantor of the D & G note to Butler, then Louise Davis (as guarantor of her husband's obligations), as a matter of law, was indebted to Butler.

Much of Butler's argument stresses the compliance with notice and demand, and the admission by Louise Davis that she executed the guaranty dated August 18, 1956. Butler contends that demand of payment was proven by an unopened letter of demand sent to, but refused by Louise Davis. Butler further contends that demand was proven by the filing of this action. It is to the guaranty itself that Butler directs its strongest argument regarding the validity, and hence the enforceability, of the guaranty against Louise Davis. The pertinent portion of the guaranty reads as follows:

"TO BUTLER STATE BANK OF BUTLER, MISSOURI:

The undersigned hereby request you to give and continue to give, BUZZ DAVIS (hereinafter styled the 'borrower') from time to time, as you may see fit, financial accommodations and credit, and, in consideration of the sum of one dollar ($1.00), and other valuable considerations, the receipt of which is hereby acknowledged, and of financial accommodations and credit heretofore given or which may

hereafter be given by you to said borrower, the undersigned hereby guarantee and promise and agree to make prompt payment to you, as they severally mature, of all overdrafts of said borrower, of all loans made, or which may be made by you to said borrower, of all moneys paid by you for the use of account of said borrower, and of all notes, acceptances and other paper which have been or may be discounted for, or at the request of, said borrower, whether made, drawn, accepted, endorsed or not endorsed by said borrower, and whether endorsed with or without recourse, and of any and all other obligations, of every kind and character, now due or which may hereafter become due from said borrower to you howsoever created arising or evidenced, and also of any and all renewals or extensions of any of the foregoing regardless of other collateral now held by you, or which you may hereafter acquire, as additional security to any or all of the indebtedness of said borrower.

"It is understood that the extension of time payment, or the renewal of any such indebtedness shall not in any way impair the liability of the undersigned hereunder, and that the undersigned will keep posted as to all matters pertaining to this guaranty without notice from you.

When any such overdrafts, loans, discounts, or other paper, or obligations, or any renewal or extension thereof, shall become and remain due and unpaid, the undersigned will, upon demand, pay the amount due thereon.

These presents constitute a continuing promise and agreement and shall apply to and cover any and all such overdrafts, loans, discounts, or other paper, or obligations, now or hereafter existing, and to any and all renewals or extensions thereof, made, discounted or created prior to notice in writing served upon your president, any one of your vice-presidents, your secretary, cashier, or treasurer, that the undesigned (sic) will not be liable upon any such overdrafts, loans, discounts or other paper or obligations made, dis-

counted, or created, after the receipt of such notice.

Before proceeding hereunder against any of the undersigned, resort need not be made by you to collateral security held for said indebtedness, nor need you exhaust your remedy against said borrower, nor against any other signer to this guaranty.

Notice of the making, renewing or extending time of payment of any such overdrafts, loans, discounts, or other paper or obligations, and of demand, protest, and notice of nonpayment thereof, and of notice of acceptance hereof, are expressly waived."

Butler urges that this issue is ruled squarely by *Empire Bank v. BAM Construction, Inc.,* 607 S.W.2d 227 (Mo.App.1980). The factual circumstances in *Empire* are similar to the instant case, but not identical. In *Empire,* BAM obtained credit from Empire, and Ronald Butts executed his personal guaranty on behalf of BAM to the favor of Empire. On the same day, Twila Butts executed her personal guaranty to the favor of Empire, enabling her husband, Ronald, to secure credit from Empire. The result achieved in the *Empire* case points out some similarities with the instant case. First, the court recognized and emphasized the broad scope of the wife's guaranty statement. The court disagreed with the wife's contention that the trial court had failed to strictly construe her guaranty, and then ruled that the language of the guaranty was "sufficiently broad in scope to render her liable to plaintiff." *Empire* at 228.

In yet another way, *Empire* is similar to the instant case. The court ruled that the guarantor-wife, by the scope of her guaranty, could be held liable for her husband's obligations, although the husband's obligations or liability was secondary. This is like the instant case. As noted above, D & G was the original maker on the note to Butler, and Buzz Davis executed his personal guaranty on that note to Butler. It is at this juncture that the facts of the instant case and *Empire* begin to differ.

In the instant case, Louise Davis had originated her guaranty on August 18, 1956, relative to a $1,000 loan to her husband by Butler. The evidence permits the conclusion that this original indebtedness was satisfied. Some twenty-one years later, the D & G corporation obtained a loan of $26,000 from Butler. In support of this transaction, Buzz Davis executed his guaranty. Butler, in this proceeding, sought the application of the guaranty of Louise Davis, executed August 18, 1956, to the loan of D & G supported by the personal guaranty of her husband, Buzz Davis. The trial court disagreed with Butler and directed a verdict for Louise Davis on this issue.

The trial court erred in directing a verdict for defendant, Louise Davis, upon Count III. *Empire, supra.* However, in addition, Butler was not entitled to a directed verdict upon that count either. The reason that neither party was entitled to a directed verdict is that an issue of fact existed for determination by the jury as fact finder, as a result of Butler's evidence surrounding the question of guaranty. The record reveals that when Buzz Davis, on behalf of D & G, was negotiating the $26,000 loan, Butler, through its agent and representative, expressed a desire for a new guaranty from Louise Davis, and through Buzz Davis, it solicited such a guaranty. The pertinent testimony reads as follows:

"Q. (By Mr. Bernard, attorney for appellant) Do you know from your own personal experience in your capacity as an officer of the bank why this guaranty was obtained?

A. I wasn't present at the time, naturally. The only thing I can say, I would know why it was obtained just in due course of banking business.

Q. And what was that reason?

A. At the time—

MR. WEEDMAN: (Attorney for respondents, interrupting) I renew my objection again.

THE COURT: The objection will be sustained.

Q. (By Mr. Bernard) When did you yourself actually begin handling business of either Buzz or Louise Davis?

A. This would be approximately a date, but I would guess it would have been around 1960 to '65.

Q. Did you at any time after you started handling their business, whenever that date was, ever have occasion to discuss this particular guaranty with either Buzz or Louise Davis? A. No, sir.

Q. Did you ever discuss with either of the defendants obtaining another guaranty from Mrs. Davis?

A. Yes.

Q. Do you remember about what that would have been?

A. Well, most recently I would say it was probably about four years ago.

Q. Are you the one that initiated the conversation?

A. Yes, sir.

Q. Why was that? A. I felt at the time that we were beginning the business with D & G Construction Company, Inc., you know, that we should have Louise's— Louise Davis' knowledge of her responsibilities to the loans.

Q. What do you mean by, 'responsibilities to the loans'?

A. That she would still—that her guaranty would still be in effect on any loans made to the corporation.

Q. Was this discussion with Mr. Davis?

A. Yes, sir.

Q. And what did Mr. Davis say? Did you tell him you wanted another guaranty? What did you ask him?

A. I asked for another guaranty."

The foregoing testimony shows a contradiction. In one instance, it is obvious that Butler solicited a guaranty from Louise Davis via her husband [there is no evidence that Louise Davis was ever made aware of this solicitation], and then the witness for Butler stated, "that her guaranty would still be in effect on any loans made to the corporation." That statement, within the context of the entirety of this witness's testimony, is susceptible to an interpreta-

tion as a reference to a subsequent guaranty, if any, executed by Louise Davis. It is to be noted again that this same witness, (in the above-quoted testimony,) testified:

> "Q. (By Mr. Bernard) Do you know from your own personal experience in your capacity as an officer of the bank why this guaranty was obtained?
> A. I wasn't present at the time, naturally. The only thing I can say, I would know why it was obtained just in due course of banking business."

This evinces that the execution of the guaranty (August 18, 1956) by Louise Davis was for and in the course of financial transactions totally separate and distinct from any financial relationship with D & G.

■ In light of the foregoing evidence, the question arises as to whether Butler intended to rely upon the guaranty executed by Louise Davis on August 18, 1956 in regard to the transactions of D & G which originated 21 years later. This was a fact question generated by Butler's evidence which was within the province of the jury as fact finder. The trial court did not err in overruling Butler's motion for a directed verdict on Count III. Point (1) is ruled against Butler.

Under point (2), Butler charges that the trial court erred in directing a verdict for defendant Louise Davis. There is no reason to restate the surrounding circumstances or the evidence already referenced under point (1) above. It suffices to state the trial court erred when it directed a verdict for defendant, Louise Davis. The issue should have been submitted for determination by the jury. Butler's point (2) is sustained. The portion of the judgment directing a verdict to the favor of Louise Davis is reversed and the cause on that issue is remanded.

Under its point (3), Butler charges that the trial court erred in overruling Butler's motion for a directed verdict upon Count VI of its petition. In that count, Butler sought recovery against Louise Davis under her August 18, 1956 guaranty of a promissory note executed by her husband for the sum of $70,000 on October 1, 1979.

The record reveals that both Butler and Louise Davis moved for a directed verdict upon this count. The trial court overruled both motions and submitted the issue to the jury. The jury returned its verdict in favor of Louise Davis. It should be noted that this particular loan transaction did not provide D & G as the maker of the note with Buzz Davis as guarantor of that loan, but rather, the loan was made by Buzz Davis directly with Butler. The evidence reveals Butler's efforts to secure a guaranty from Louise Davis in support of this loan. The guaranty was never executed by Louise Davis, and the evidence supports the inference that she was never aware of the tender of the guaranty by Butler.

■ Because Butler's evidence raised the question (by reason of its solicitation of another guaranty from Louise Davis) as to whether Butler relied upon the 1956 guaranty, the issue was properly submitted to the jury for its determination. The trial court did not err in submitting Count VI to the jury. Butler's point (3) is meritless and is ruled against Butler.

■ Under its final point (4), Butler contends that the trial court erred in sustaining defendant's motion in limine which prevented introduction of evidence relative to the declared bankruptcy of Charles Galloway, and in refusing Butler's tendered instruction which would have advised the jury of the bankruptcy.

The record reveals that Butler received a restraining order, staying all proceedings by Butler against Charles Galloway, from the United States District Bankruptcy Court in Kansas City, Missouri. In response to this order, the trial court herein ordered the claims against Charles Galloway severed pending further order of the Bankruptcy Court. In addition, the trial court sustained defendants' motion in limine, prohibiting the mention of Galloway's bankruptcy. This motion did not prohibit the use of or reference to Galloway's name, but merely prohibited all reference or recital of the bankruptcy.

This question was discussed at length between counsel for all the parties and the court. The record fails to reveal any objec-

tion to the motion in limine by Butler. On this appeal, Butler now complains it suffered prejudice as a result of the trial court's ruling. Butler argues that the situation became "analogous to the situation of providing evidence (i.e., the record reveals that both parties in the introduction of their evidence referred to Charles Galloway as a party to some of the financial transactions) concerning the absence of a witness, who is available to a party and who has critical knowledge of the facts in dispute." It is difficult to perceive how Butler's claim that the motion in limine regarding the bankruptcy of Charles Galloway was relevant, and thus analogous, to the situation of a missing witness. This argument has no merit.

Under this final point, Butler expands its attack upon the trial court, charging that the court should have submitted a modified form instruction (modification of MAI 34.-02). The tendered instruction would have alerted the jury to the bankruptcy of Charles Galloway.

At the outset, it is to be observed that the submission of or refusal to submit the tendered instruction was within the discretion of the trial court, *Helming v. Adams,* 509 S.W.2d 159, 169 (Mo.App.1974) and *Kasper v. Helfrich,* 421 S.W.2d 66 (Mo.App.1967), and the ruling thereon will not be set aside absent the showing of an abuse of that discretion. It is evident from the record that the trial judge was faced with resolving the question whether submission of the instruction would prejudice defendants Louise Davis and Buzz Davis on the one hand (i.e., because it would have advised the jury of the potential inability of Butler to collect any judgment against Charles Galloway), and on the other hand, whether Butler would be prejudiced in its claims against both Buzz Davis and Louise Davis if the instruction was refused. Not only is it impossible to observe how Butler was in any way prejudiced by the refusal of the instruction, it is clear that the trial court did not abuse its discretion upon its refusal to submit the offered instructions.

As a closing note, Butler again expands its argument under this point, charging that defense counsel improperly, and hence prejudicially, argued that enforcement of the indebtedness against Buzz Davis and Louise Davis would be unreasonable, and that it was prejudicial for counsel to have argued that the jury could consider "the credibility of the bank in not pursuing Mr. Galloway and they made no demand upon Mr. Galloway." There are two reasons why this last contention fails. The first is that argument reference to Charles Galloway, when weighed in light of the total final argument, cannot, even though the contrary is suggested by Butler, be said to have been prejudicial to Butler. In addition, Butler offered no objection to such argument, and hence failed to preserve anything for review. *Mueller v. Storbakken,* 583 S.W.2d 179, 186 (Mo. banc 1979).

There is no merit to Butler's point (4) and it is ruled against Butler.

For the reasons set forth herein, that portion of the judgment upon Count III, directing a verdict to the favor of Louise Davis is reversed and the cause is remanded upon that issue only. The judgment is in all other respects affirmed.

All concur.