Juli A. PLOCH, Appellant,

v.

Kenneth HAMAI, Jr., M.D.,
Respondent.

No. ED 87353.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 19, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 2007.

Application for Transfer Denied Feb. 27, 2007.

Kenneth C. Bronston, Tyler S. McClay, Saint Louis, MO, for respondent.

Leonard P. Cervantes, Jennifer Suttmoeller, Saint Louis, MO, for appellant.

## OPINION

GLENN A. NORTON, Presiding Judge.

Juli A. Ploch appeals from the judgment entered on the verdict in favor of Dr. Kenneth Hamai, Jr. on her claim of medical malpractice. We reverse and remand for further proceedings.

## I. BACKGROUND

Hamai performed a laproscopically assisted vaginal hysterectomy on Ploch. She stayed in the hospital for nearly two days after the surgery. During that time, she complained several times to the nurses that, on a scale of one to ten, her pain ranged from five to seven, including pain a few hours before she was discharged. The nurses documented all of this on her medical chart, and she was given a series of different medications for the pain. Hamai examined Ploch before discharging her. He did not read the nurses' notes documenting her post-operation pain. He noted in his discharge summary that she had no fever, her vitals were stable, she had no symptoms consistent with kidney pain, her abdomen was not tender and she was doing well. The nurse assisting Hamai in his discharge examination noted that there were no complaints of pain at discharge.

The day after she was discharged, Ploch reported that she had no increase in pain. At trial, she testified that she was continuously in pain during and after discharge and that she told Hamai so, but that she meant that the pain was no worse after discharge than during her hospital stay. One month after surgery, Hamai examined Ploch and noted that she was doing well with no complaints. Ploch called Hamai one week later requesting permission to return to work. Hamai did not hear from Ploch again until after she developed flank pain six months after the hysterectomy and she was treated by Dr. Sunil Apte, a urologist, for an obstructed ureter. Apte determined that the obstruction was scar tissue and that one of her kidneys had stopped functioning because of the block-

age. Apte did not know the cause, but he and other experts testified at trial that it could have been caused by an errant suture or staple from the hysterectomy injuring the ureter.

One of Ploch's expert witnesses, Dr. Richard Hartman, testified that Hamai deviated from the standard of care by not reading the nurses' notes. Hartman also testified that Hamai should have picked up on the pain levels that Ploch experienced after surgery and, therefore, ordered more tests, which in turn would have revealed the obstruction. Additional surgery within seventy-two hours of the obstruction would have left the kidney undamaged. Hamai testified that the standard of care was to read the notes, examine and speak with the patient to confirm the symptoms and, if the symptoms were confirmed, then order tests to determine whether the ureters were blocked. He also testified that he felt that he did not need to read the notes because he spoke with Ploch just before discharge, in a nurse's presence, and that she had no complaints at that time. His physical examination also revealed no problems.

Ploch proposed a verdict director that read as follows:

> Your verdict must be for the Plaintiff if you believe:
>
> First, Defendant Hamai either:
>
> injured Plaintiff's ureter; or
>
> failed to recognize during the operation that he had injured
>
> Plaintiff's ureter, or
>
> failed to read the nurse's notes before discharging Plaintiff, or
>
> failed to order a test after the operation and before discharging
>
> Plaintiff to determine whether Plaintiff's ureter was obstructed, and

> Second, Defendant Hamai, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and Third, as a direct result of such negligence Plaintiff sustained damage.

Hamai objected to the proposed instruction on the grounds that no submissible case was made supporting a causal relationship between Hamai failing to read the nurses' notes and Ploch's damages. The court stated that the proposed instruction was disjunctive and that the failure to read the notes "was not alone causally connected to the injury." The proposed verdict director was rejected in favor of one identical except without the "nurses' notes" alternative.

During closing arguments, counsel for Hamai stated that the scarring could have been caused by anything, including precancerous cells, endometriosis, or dysplasia. He noted that Ploch's surgeon who discovered the scarring could not give an opinion about the cause of the scarring. Ploch's counsel did not object.

The jury returned a verdict for Hamai, and the court entered judgment on the verdict. Ploch appeals.

## II. DISCUSSION

### A. Standard Of Review For Refusal To Submit A Proffered Verdict Director

There is some confusion surrounding the standard of review of a trial court's refusal to submit a proffered verdict director. This is exemplified by the parties' briefs, which cite cases stating both that the trial court has wide discretion and that the matter is a question of law, to which little or no discretion is granted. Similarly, in a case both parties cited, *City of Sullivan v. Truckstop Restaurants,* this Court stated that an appellate court reviews a trial court's refusal to submit a jury instruction

for an abuse of discretion. 142 S.W.3d 181, 197 (Mo.App. E.D.2004). The case also stated that "[t]he issue of whether a jury has been properly instructed is a question of law." *Id.* at 197.

Recently, the Western District addressed this discrepancy in *Marion v. Marcus*, 199 S.W.3d 887 (Mo.App. W.D. 2006). The court adopted a *de novo* standard, following the language of Supreme Court Rule 70.02(a).[1] *Id.* at 892–94. That rule states that "[a]ll instructions shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(a); *see also* Rule 70.02(c) ("The giving of an instruction in violation of the provisions of this Rule 70.02 shall constitute error."). The court in *Marion* reasoned that the use of the word "shall" in Rule 70.02(a) "does not admit discretion on the part of the trial judge if the proffered instruction is supported by the evidence and the law and is in proper form." 199 S.W.3d at 892. Consistent with this, the court stated that "[t]he refusal to give a verdict director supported by the law and the evidence is not a matter for the trial court's discretion." *Id.* The court also noted that our Supreme Court has followed this standard under Rule 70.02. *Id.* at 892–93 (citing *Shutt v. Chris Kaye Plastics Corp.*, 962 S.W.2d 887, 890 (Mo. banc 1998); *State v. Richardson*, 923 S.W.2d 301, 318–19 (Mo. banc 1996); *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993)).

The court noted that, nevertheless, many cases have granted discretion to trial courts in refusing jury instructions. *Id.* at 893. Tracing the authority that each of these cases cited, however, revealed that the root of that authority involved issues other than refusing a tendered instruction. *See, e.g., Butler State Bank v. D G Construction Co.*, 659 S.W.2d 239, 245

(Mo.App. W.D.1983) (granting discretion in *modifying* an MAI instruction); *Helming v. Adams*, 509 S.W.2d 159, 169 (Mo. App.1974) (granting discretion in *withdrawal* instructions); *Apex Oil Co. v. Beldner*, 567 S.W.2d 336, 339 (Mo.App. 1978) (never discussing standard of review). In fact, the case relied on by the parties in this case involved the refusal to submit a tendered non-MAI instruction and relied on authority that, at its root, involved the modification of a non-MAI instruction, not the refusal to give an instruction. *City of Sullivan*, 142 S.W.3d at 197 (citing *First State Bank of St. Charles v. Frankel*, 86 S.W.3d 161 (Mo.App. E.D. 2002), which cited to *Butler State Bank*, 659 S.W.2d at 245); *see also Marion*, 199 S.W.3d at 893 (researching the history of Frankel). This authority does not apply to the situation here, where the court refused an instruction without any indication that Ploch challenged the modification of an MAI.

■ The standard cited by the parties, granting discretion to the court in refusing a tendered instruction, conflicts with Rule 70.02. Following the analysis in *Marion*, we review the court's refusal to give a proffered verdict director *de novo*, evaluating whether the instruction was supported by the evidence and the law. 199 S.W.3d at 893–94. We will reverse only if the error resulted in prejudice and materially affected the merits of the action. *Id.* at 894. We review the evidence in the light most favorable to submission of the instruction. *Erdman v. Condaire, Inc.*, 97 S.W.3d 85, 95 (Mo.App. E.D.2002).

## B. Trial Court's Refusal To Submit A Proffered Verdict Director

■ An instruction must be given where there is substantial evidence to sup-

---

**1.** All rules references are to Supreme Court Rules (2006).

port the issue submitted. *Romeo v. Jones,* 144 S.W.3d 324, 330 (Mo.App. E.D.2004). Substantial evidence is that which, if true, is probative of the issues and from which the jury can decide the case. *Id.* A party is entitled to an instruction on any theory supported by the evidence. *Id.* In the case of a disjunctive instruction, each submission must be supported by substantial evidence. *Berra v. Union Electric Co.,* 803 S.W.2d 188, 190 (Mo.App. E.D.1991). There are three elements of a prima facie medical malpractice claim: "(1) proof that the defendant's act or omission failed to meet the requisite standard of care; (2) proof that the act or omission was performed negligently; and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff." *Wicklund v. Handoyo,* 181 S.W.3d 143, 148–49 (Mo.App. E.D.2005). Taking these standards under consideration, we review the record for substantial evidence of the "essential facts" of the rejected verdict director, namely, that Hamai negligently failed to read the nurses' notes and that this caused Ploch's damages. *See Banther v. Drew,* 171 S.W.3d 119, 124 (Mo. App. S.D.2005).

## 1. Negligent Violation Of The Standard of Care

■ Ploch presented substantial evidence that Hamai negligently violated the standard of care by not reading the nurses' notes. Hartman expressly stated in his testimony that Hamai violated this standard:

Q: So Doctor, I'm going to ask the question again. By not looking at the nurse's notes on January 11th, 2001, did Dr. Hamai deviate from the standard of care?

[objection overruled]

A: Yes, he did.

Q: ... And as a result and when we say deviation from the standard of care, you know the definition. That means what physicians, gynecologic surgeons would do under the same or similar circumstances, correct?

A: That's correct.

Hamai also alluded to this standard in his testimony, although he denied in his brief that he meant that reading the nurses' notes was exclusively the standard of care:

Q: ... If you had read the nurses notes and seeing that abdominal pain there recorded, along with the backache and the intensity of 7 and confirmed that with [Ploch], you would have done either an ultrasound or an IVP in order to determine whether or not one or both of her ureters were obstructed?

A: If I'd have read those notes and I confirmed it with her and examined her and found those things to be true, then I would do that, yes.

Q: And that's the standard of care?

A: Yes.

Q: And if you didn't do that under those circumstances, you would have violated the standard of care. You wouldn't have done what other gynecologists do in that situation.

A: Yes.

Q: You did not read those nurses notes.

A: I did not.

In *Banther,* the Southern District held that, viewing the evidence in a light most favorable to submission of the instruction, the plaintiff's expert's testimony of the standard of care and the defendant's violation of it was substantial evidence to support instructing the jury on the contested theory. 171 S.W.3d at 122–25. The court held this way despite the defendant's testimony that the standard of care was differ-

ent. *Id.* at 124. Similarly, here, Hamai arguably stated a different standard than Hartman, but Hartman's testimony was sufficiently probative of the essential facts of the standard of care and negligence to support submission of the proffered instruction.

## 2. Causation

■ Hamai vehemently argues that Ploch did not present substantial evidence of causation on the nurses' notes theory. He insists that the evidence was too speculative to establish a causal connection. Ploch argues that testimony from Hartman and Hamai was substantial evidence of a causal relationship between negligently failing to read the nurses' notes and her damages.

■ Causation may be shown through expert testimony, circumstantial evidence or favorable inferences drawn from all the evidence. *Honey v. Barnes Hospital,* 708 S.W.2d 686, 694 (Mo.App. E.D.1986). To establish causation in a medical malpractice action, the plaintiff must show that the physician's conduct was the cause-in-fact and the proximate cause of the plaintiff's damages. *Wicklund,* 181 S.W.3d at 149.

■ The plaintiff proves cause-in-fact by establishing that, but for the physician's conduct, the plaintiff would not have been injured. *Id.* Here, Ploch presented substantial evidence that failure to read the nurses' notes was the cause-in-fact of her damages. Hartman testified that the nurses' notes revealed increasing pain and that the level of pain was out of the ordinary for the procedure. He also testified that if Hamai had read the nurses' notes and seen the levels of pain reported during periods when he was not present, the proper course of action would have been to administer tests, which would have revealed the ureter obstruction. Hartman testified that with knowledge of the ob-

struction, Hamai would have alerted a urologist to the problem, who could have performed surgery to save her kidney within the seventy-two hour window. Further, Hamai's testimony about the standard of care showed that, if he had read the notes, he would have spoken with and examined Ploch to confirm the problems and then ordered tests to diagnose the cause of the pain. The testimony from these two witnesses, and the favorable inferences drawn therefrom, was substantial evidence that without reading the notes, Hamai could not examine Ploch to confirm the symptoms of a blocked ureter. The evidence indicated that this diagnosis while she was in the hospital would have saved her kidney. Therefore, Ploch presented substantial evidence that Hamai's negligent failure to read the notes was the cause-in-fact of Ploch's damages.

■ To justify submission of her verdict director to the jury, Ploch was also required to present substantial evidence that failure to read the notes was the proximate cause of her damages. "[C]onduct can constitute the proximate cause of any harm which is its 'natural and probable result.'" *Tompkins v. Cervantes,* 917 S.W.2d 186, 190 (Mo.App. E.D.1996). As noted, Hartman and Hamai both testified that reading the nurses' notes would have triggered events resulting in properly diagnosing Ploch with an obstructed ureter and treatment of that condition. Viewed in a light most favorable to submission, Hartman's and Hamai's testimonies are probative of causation and a jury could decide on that issue based on that evidence. The evidence was, therefore, substantial evidence of proximate cause and justified Ploch's proposed verdict director.

## 3. Prejudice

■ Finally, Hamai argues that the judgment should not be reversed because

there was no prejudicial error materially affecting the merits of the case. *See Romeo,* 144 S.W.3d at 330. Specifically, he claims that the jury had an opportunity to consider the issue of Hamai's failure to read the notes in the accepted instruction. In support, he notes that the approved verdict director contained a submission allowing the jury to consider whether he was negligent for failing to order an additional test after the operation and before discharging Ploch to determine whether her ureter was obstructed. Hamai asserts that all of the evidence indicates that, if he had read the notes and recognized a continuing condition, he would have ordered tests, and, therefore, the submission addressing his potential negligence in failing to order a test allowed the jury to consider the reading of the notes. At oral argument, this was characterized as one instruction subsuming the other, making the nurses' notes submission seem like an extra, unnecessary step.

Reading the nurses' notes was not, however, an unnecessary extra step; it was not simply an additional step towards proving Ploch's damages. Rather, Hartman testified that failure to read the notes was, in itself, a violation of the standard of care. This testimony, as explained, was substantial evidence of Hamai's negligence, and further testimony was substantial evidence that this act of negligence caused Ploch's damages. Hartman did not testify only that the standard of care mandated that Hamai conduct tests; in fact, he testified that reading the notes was what would have prompted the tests to be administered. Refusing the proffered instruction, which was supported by substantial evidence, materially affected the outcome of the case by not allowing the jury to consider Hamai's potential liability on an issue sufficiently presented at trial. Ploch was therefore prejudiced, and reversal is the proper disposition.

This point is granted.[2]

## III. CONCLUSION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

LAWRENCE E. MOONEY and KENNETH M. ROMINES, JJ., concur.

---

**2.** Because the disposition of this point warrants a new trial, we do not address Ploch's second point alleging plain error in comments during closing argument.