Bernice MITCHELL, Appellant,

v.

Joseph EVANS, M.D., Surgical Care of Independence, Inc, Sol H. Dubin, M.D., Orthopedic Associates of Kansas City, Inc, Robert L. Bowser, M.D., Jeff Richardson, C.R.N.A., and Independence Anesthesia, Inc., Respondents.

No. WD 66959.

Missouri Court of Appeals, Western District.

May 13, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2008.

Application for Transfer Sustained Nov. 25, 2008.

Case Retransferred June 30, 2009.

Court of Appeals Opinion Readopted July 8, 2009.

William H. Pickett, Kansas Ciy, MO, for appellant.

Brian Pratt, Kansas City, MO, for respondents Joseph C. Evans, M.D. and Surgical Care of Independence. Inc.

Diane Waters, Shawnee, KS, for respondents Sol H. Dubin, M.D. and Orthopedic Associates of Kansas City, Inc.

Marc Erickson, Kansas City, for respondents Robert L. Bowser, M.D., Independence Anesthesia, Inc. and Jeff Richardson CRNA.

RONALD R. HOLLIGER, Judge.

Bernice Mitchell (hereafter "Mitchell") appeals a judgment entered after a jury verdict in her wrongful death medical mal-

practice case brought after the death of her son, William Mitchell (hereafter "Decedent"), while being medically treated following a severe automobile collision. The defendants are two surgeons, Joseph Evans, M.D. (hereafter "Dr. Evans") and Sol H. Dubin (hereafter "Dr. Dubin")[1]; an anesthesiologist, Robert L. Bowser, M.D. (hereafter "Dr. Bowser"); and a nurse, Jeff Richardson, C.R.N.A. (hereafter "Nurse Richardson")[2] (the defendants are hereafter collectively referred to as "health care providers"). Mitchell raises five points of error on appeal. Her first claim, involving instructional error, is dispositive. Because the trial court erred in refusing to give Mitchell's proffered verdict directors, which were supported by the evidence and in proper form, we reverse and remand for a new trial.

Decedent was involved in a car chase leading to a collision in which he was seriously injured. He sustained breaks of both femurs and other injuries, including a possible neck injury. He was transported to Independence Regional Health Center (hereafter "IRHC") where he was treated by Drs. Evans, Dubin, and Browser. He was first seen in the emergency room about 2:00 A.M. by Dr. Evans, head of IRHC's trauma team. He was taken to the operating room at about 7:15 A.M. for surgical repair of the fractures, which began about 8:36 A.M. After administration of a spinal anesthetic by Dr. Bowser and Nurse Richardson, Dr. Dubin began surgery on the left leg. Dr. Dubin was unable to perform surgery on the right leg because of a sudden decline in Decedent's status during surgery, which required emergency intubation and cessation of the surgery at approximately 9:50 A.M. He died later that day.

Decedent's mother later brought this action for wrongful death alleging that the defendant health care providers were negligent in their treatment of her son.[3] Whether the health care providers were negligent was hotly contested. Equally contested, and of particular importance on appeal, was a disagreement over the medical cause of death. A known complication of bone fractures is the release of fat emboli from the bones that can migrate to the lungs and block oxygen exchange and even cause death. Fat emboli were found in Decedent's lungs on autopsy. The autopsy also revealed pulmonary emboli. Neither of these conditions, both of which can cause death, were claimed or could be attributable to the care provided by the health care providers. Mitchell's theory was that the medical cause of death was aspiration of food into the lungs after her son became unconscious during surgery. One of her experts testified to signs of aspiration in the autopsy results and that this was a contributing cause of death. Mitchell's claim was that aspiration during surgery was made possible because of the use of a spinal anesthetic rather than a general anesthetic with intubation to protect the airway. A spinal method was chosen because of a concern that Decedent may have had a cervical or basal skull fracture, which the doctors were hesitant to expose to movement by intubation.

Mitchell's experts testified that Decedent was not sufficiently stabilized before surgery and, more specifically, that his hemodynamic stability was inadequate and

1. Their related corporate employers are also defendants.

2. The corporate anesthesia employer is also a defendant.

3. Mitchell also brought multiple separate suits against other defendants alleging their responsibility for the automobile accident. A request to join some of those suits in one action was denied.

his fluid volume should have been improved before surgery. With regard to Drs. Dubin and Bowser, Mitchell's theory was that they should have used an endotracheal tube with an inflated cuff, which would have permitted the use of a general anesthetic.

The jury returned a verdict in favor of the defendants, and Mitchell appeals. She raises five claims of trial court error. The instructional error is dispositive. Because the other points were either not properly preserved or are unlikely to reoccur on retrial, we do not address them.

## THE COURT ERRED IN REJECTING PLAINTIFF'S PROPOSED VERDICT DIRECTORS

Mitchell's first point on appeal argues that the trial court erred in giving Instruction Numbers 7, 9, and 11, which were verdict directors drafted by the court. Conversely, she argues that the trial court should have given her proposed verdict directors because they were supported by the evidence and were in proper form. Mitchell argues that if those two criteria are met that she has a right to have her case submitted on the theory she proposes and in the manner in which she seeks.

Before considering the merits of Mitchell's claim, we must first consider the health care providers' argument that Mitchell failed to properly preserve her claim as required by Rule 70.03. They argue that Mitchell failed to make specific objections to the court—drafted verdict directors. Rule 70.03 provides in part, "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection." Thus, they contend that

we may review only for plain error. We disagree.

The instruction conference reflects that the trial court had had extensive conversations with counsel off the record and was prepared to announce which instructions it intended to give. It then announced that it intended to give verdict directors that were not tendered by either party. The court already had in hand Mitchell's proffered verdict directors, which then were marked "refused." Mitchell's counsel objected that his proposed instructions were "a fair and appropriate statement of the ultimate fact issues and did not detail the facts as much as what the Court did and is giving." We think it was clear that counsel was objecting to the court's version of the instructions and instead believed that his version was more appropriate and desirable. The purpose behind Rule 70.03 is to put the court on notice of both the fact of objection and the reasons. That purpose was served here and in this context. It was clear that Mitchell wanted to give her version of the verdict directors, not the court's. That she had a right to do, if in proper form and supported by the evidence. *Marion v. Marcus*, 199 S.W.3d 887, 893—94 (Mo.App. W.D.2006).

The health care providers spend considerable time and effort arguing that the instructions drafted by the trial court were supported by the evidence and in proper form. That argument, however, misses the point. A plaintiff or defendant has a right to try or defend a case based on his or her own theories as long as they are supported by the law and the evidence. No discretion exists for the trial court to make those decisions or impose its judgment on the parties. *Id.* at 892—93. The health care providers do not address this proposition from *Marcus* and as also stat-

ed in *Ploch v. Hamai,* 213 S.W.3d 135, 139 (Mo.App. E.D.2006).

Thus, we consider whether the rejected instructions were in proper form and supported by the evidence. The health care providers make no claim that the form of the instructions was improper. They do generally contend that each was not supported by the evidence. This is the question we specifically address.

■ The rejected verdict director as to Dr. Evans submitted as its sole specification of negligence that Dr. Evans "failed to establish adequate hemodynamic stability by proper restoration of fluid volume before allowing surgery by Dr. Dubin." In only one sentence do the health care providers argue that the rejected verdict director was not supported by the evidence. The argument is clearly without merit.

Mitchell's theory was that Decedent was, essentially, in shock as a result of the accident injuries with severely fluctuating blood pressure, tachycardia, and low blood volume. Because the surgery was not "life saving," the standard of care required that he be stabilized (called "hemodynamic stability") before going to surgery. Mitchell's experts testified that the standard of care required blood or fluid replacement sufficient to establish hemodynamic stability before going to surgery. This, it was opined, Dr. Evans failed to do.

Mitchell then presented testimony that, as a result of this instability, Decedent lacked sufficient blood perfusion to the organs and particularly the brain during surgery. As a result, Mitchell's experts testified, he lost consciousness and was able to aspirate stomach contents into the lungs because his airway was not protected by an endotracheal tube (because of the choice of spinal anesthetic). This aspiration then, under Mitchell's theory, caused chemical pneumonitis, contributing to cause his death. The rejected verdict di-

rector against Dr. Evans was supported by the evidence.

■ The proposed verdict director against the surgeon, Dr. Dubin, alternatively submitted that he "failed to establish hemodynamic stability by proper restoration of fluid volume before his surgery" or "failed to assure that an endotracheal tube with an inflated cuff around it was placed for use with general anesthesia before his surgery." Dr. Dalenberg testified that an orthopedic surgeon's standard in a trauma situation included both of these obligations. Dr. Dubin contends that Dr. Dalenberg did not testify in the exact language utilized in the second disjunctive. But he did not need to do so. He clearly stated that it was Dr. Dubin's responsibility to see that a proper anesthesia method was used and that a general anesthetic with airway protection was required for a patient in Decedent's condition. Other testimony established that an endotracheal tube was the proper method. No expert's testimony should be read in a vacuum but rather in the context of all of the evidence, medical and otherwise. That he did not specify that choice of an inflated cuff was Dr. Dubin's responsibility, where the other evidence suggested that the inflated cuff was what should be used, does not detract from the evidentiary support for the submission. The second disjunctive was consistent with the evidence and supported by the testimony of Dr. Dalenberg.

Nor do we understand Dr. Dubin's claim that the first hypothesis of negligence was not supported by the evidence. Read as a whole, the testimony states that the standard of care requires that the orthopedic surgeon is responsible for the hemodynamic stability of his patient whether that be expressed as hypovolemia (the condition that causes hemodynamic instability) or the affirmative duty to treat or ensure

treatment that will restore hemodynamic instability. The submission rejected was supported by the evidence.

■ The rejected instruction as to Dr. Bowser was that he "failed to establish adequate hemodynamic stability by proper restoration of fluid volume before surgery by Dr. Dubin" or "failed to assure that an endotracheal tube with an inflated cuff around it was placed for use with general anesthesia before surgery by Dr. Dubin." Again, Dr. Bowser's argument that these submissions are not supported by the evidence is semantic and without merit. Mitchell's expert testified that Decedent was hemodynamically unstable and either should have been stabilized before surgery or a general anesthetic with intubation should have been used to reduce the risk of aspiration. The proposed submission was supported by the evidence.

■ The trial court erred in refusing to give Mitchell's proffered verdict directors against each of the health care providers. The health care providers' argument that the verdict directors actually given were also supported by the evidence is contrary to the rationale of *Marcus, supra.* A party has a right, assuming evidentiary support and propriety of form, to choose their own submissions of liability and defense.

■ Error in giving and refusing instructions is not reversible, however, in the absence of prejudice. Rule 70.02(c). Otherwise stated the error must "materially affect[ ] the merits." Rule 84.13(b). To demonstrate the lack of prejudice, health care providers point to the actual instructions given and argue that they are substantially equivalent to or include the concepts advanced in Mitchell's rejected verdict directors. The instructions drafted and given by the court were different as to each regarding the allegation of negligence concerning Mitchell's preoperative condition. Instruction 7 asked whether Dr. Evans was negligent in "permit[ing] William Mitchell while in an unstable condition to be transferred to surgery." This is not, in our opinion, the equivalent of Mitchell's proposed instruction. The court submitted whether Dr. Evans should have objected to and prevented the surgery. Mitchell's submission was a different theory of negligence: that Dr. Evans should have established hemodynamic stability before the surgery. These are not the same specifications of negligence. *Ploch,* 213 S.W.3d at 142. The same analysis applies to the court's instructions regarding Dr. Dubin and Dr. Bowser. As to Dr. Bowser, the court's theory of negligence was taking Mitchell to surgery in an unstable condition. Mitchell chose to submit a more affirmative breach of duty to establish hemodynamic stability by fluid volume restoration. These are not the same specifications of negligence. *Id.* The same is true as to its second specification against Dr. Dubin that he should have objected to the use of a spinal anesthetic. Mitchell posited a more affirmative and direct duty to ensure use of an endotracheal tube. And as to Dr. Bowser it is again not equivalent to give an instruction of duty not to use a spinal anesthetic rather than the proffered affirmative duty to use an endotracheal tube.

Mitchell was prejudiced by the failure of the trial court to give her proffered verdict directors. The cause is reversed and remanded for a new trial.

VICTOR C. HOWARD, Chief Judge, and PAUL M. SPINDEN, Judge, concur.