James BINION, Appellant,

v.

Dean ARMENTROUT, Respondent.

No. 47447.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

William R. Kirby, Louis Beck, St. Louis, for appellant.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover the sum of $50,000 for personal injuries sustained when he was struck by defendant's automobile. A trial resulted in a verdict for defendant. Plaintiff has duly appealed from the ensuing judgment.

In September 1955 James Simmons and his wife were living separate and apart with Simmons living in St. Louis and his wife in Mississippi. Plaintiff James Binion also lived in St. Louis and Simmons' wife was his niece. Simmons desired to make a trip to Mississippi in an effort to get his wife to return to St. Louis with him and asked plaintiff and Frank Carter to accompany him on the trip. In order to make the trip Simmons borrowed a 1946 Chevrolet pickup truck from plaintiff's brother, Sam Binion. Simmons and his companions left Carter's home at about 9:30 p. m. on September 8, 1955. They intended to get on Highway 61 at the edge of St. Louis and use that highway in making the trip. However, before arriving at Highway 61 they made a "wrong turn" and got lost. A little later they were going north on Kirkwood Road in the City of Kirkwood when the right rear tire blew out. Kirkwood Road is a four-lane highway with two lanes for traffic in each direction. Plaintiff testified that after the blowout occurred, Simmons pulled the truck as far to the right as he could and still stay on the pavement; that when they got out of the cab on the right side they stepped into weeds growing by the side of the pavement. Plaintiff stated that Simmons and Carter began to take off the right rear wheel and that he obtained the spare from the spare tire carrier, which was located at the rear and underneath the truck bed, and gave it to them; that they in turn gave him the tire (and wheel) that had been taken off the truck and he threw the damaged tire into the bed of the truck; that while the other men were putting on the spare tire he was at the rear of the truck facing the bed and screwing the nut on the bolt which holds the spare tire carrier in place. It was while plaintiff was in that position that he and the truck were struck by defendant's northbound car. Plaintiff sustained very serious injuries but the issues here involved do not require that such be detailed herein.

Plaintiff testified further that the taillight on the truck was burning; that the streets were dry; that while they were working on the truck cars had approached from the south but had pulled to the left and had

passed the truck in the west northbound traffic lane. Plaintiff admitted on cross-examination that he did not look to the south in an effort to discover northbound traffic and that no one used a flashlight or flares to warn traffic approaching from that direction.

Frank Carter testified to about the same state of facts as was related by plaintiff. In addition, however, he stated that he heard no horn or squealing of brakes before defendant's car hit the truck; that the truck was knocked two car lengths toward the north when it was struck. There was evidence that there was a street light on Kirkwood Road a short distance from the place where plaintiff was injured.

As a part of his case plaintiff also read certain questions and answers from defendant's deposition which were admitted as admissions. We will not detail those admissions, however, as they also appear in the defendant's testimony which we will summarize.

Defendant testified that at the time of the occurrence in question he was a supervisor for McDonnell Aircraft and was on his way to work. He stated that he entered Kirkwood Road at Argonne and stopped in obedience to a traffic light at its intersection with Essex and that the instant casualty occurred about four blocks north of Essex. After proceeding from the stoplight defendant was driving in the east lane for northbound traffic at about 25 miles per hour and was about two car lengths behind the car ahead. He stated that just before the collision the car ahead swerved to the left "going close to the center of the divided highway, to go around it. I did not know that he was going to have anything like that in front of him. I thought he was just passing another car, and I continued to go straight ahead. It was too late for me then, I tried to swerve to the left, and I saw this car in front of me then; it was too late for me to do anything about it." He stated that he had swerved to the left to some extent

before he struck the truck and at the instant of contact had probably reduced his speed to 15 miles per hour. He also testified that the truck was partly straddling the line between the two northbound lanes with the left side about a "foot or so" west of the dividing line and that there were no lights burning on the truck; that just before impact he saw two men jump to the right; "they took three or four good leaps," but that neither of those were plaintiff as he was thrown toward the center of the highway by the impact.

Arthur E. Meyer also worked at McDonnell Aircraft and was driving to work on the occasion in question. He stated (as a witness for defendant) that as he entered Kirkwood Road at Essex he saw defendant's car waiting at the stop sign. He testified that there was a car ahead of him as he proceeded north on Kirkwood Road and that he saw the brake lights go on as it swerved sharply to the left, and that he also swerved quickly to the left and was able to avoid striking "this truck that was out in the highway, and at the time I saw absolutely no lights."

Plaintiff's case was submitted to the jury upon the humanitarian negligence of defendant in failing to swerve his car to the left or sound a warning and thus to have avoided striking plaintiff. However, plaintiff had sought to also charge the violation of Section 304.017 (all statutory references herein are to RSMo 1949, P.P. Vol. 16 V.A.M.S.) as primary negligence on the part of defendant. Paragraph 4 of plaintiff's second amended petition reads as follows: "That at all times mentioned there was in full force and effect Section 304.017 of the Revised Statutes of Missouri 1949, which provided in substance and effect that the driver of a vehicle, other than a motor bus or truck, shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway, and plaintiff further states that said defendant did on said occasion, negligently and care-

lessly and in violation of said section, follow another vehicle more closely than was reasonably safe and prudent, under the conditions then and there existing, and that as a direct result of said carelessness, negligence and in violation of said section, said defendant did cause, allow and permit his said automobile to run into and strike the plaintiff, and the automobile-truck in which plaintiff was a passenger, causing him to be seriously and permanently injured as hereinafter more fully described." Prior to trial defendant filed a motion to strike said paragraph 4 upon the ground "that the statute referred to in said paragraph 4 was not enacted for the benefit of the plaintiff who, according to his petition, was either a passenger in a standing automobile or a pedestrian in the highway and plaintiff is not entitled to the benefit of protection of said statute." The trial court sustained said motion to strike and as the first point in his brief plaintiff contends that said ruling deprived plaintiff of his right to submit his cause under the provisions of Section 304.017 and constituted prejudicial error.

■ Section 304.017, supra, reads as follows: "The driver of a vehicle other than those designated in section 304.044, RSMo [bus and truck], shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway. Vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade, whether or not towing other vehicles, shall be so operated, except in a funeral possession or in a duly authorized parade, so as to allow sufficient space between each such vehicle or combination of vehicles as to enable any other vehicle to overtake or pass such vehicles in safety. This section shall in no manner affect section 304.044, RSMo, relating to distance between trucks traveling on the highway." As expressly provided in said section the driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent. The only vehicles excepted are buses and trucks. Since defendant was operating a Buick sedan it would appear that said provisions were applicable to him at the time and place in question.

■■ It is defendant's contention (with which the trial court apparently agreed) that the foregoing statute was not enacted for the benefit and protection of all classes of vehicular traffic upon the highways nor for the protection of any pedestrians. It is not made clear in his brief as to the vehicles he believes the statute was intended to protect, but he does clearly contend that it was not enacted for the protection of a vehicle parked on the highway for the purpose of replacing a flat tire or the persons working around said vehicle in making that replacement. We see no reasonable basis for that position. Could it be reasonably said that the statute was designed for the sole protection of the forward vehicle or vehicles following, or parked vehicles, or a passing vehicle (and occupants of said vehicles), or pedestrians? We have concluded that said section was enacted for the protection of every person or vehicle which would reasonably be afforded a measure of protection by the enforcement of the terms thereof. Nothing contained in the section would indicate any intention to restrict its application. "The purpose of statutes regulating and effecting automobile traffic on the highways is the promotion of the safety of the public." Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696, 699. We accordingly hold that, under the circumstances here presented, plaintiff was entitled to allege and (if the evidence so warranted) submit by an appropriate instruction defendant's violation of Section 304.017 as a basis for recovery herein. While we know of no case wherein the courts of this state have decided the precise question under consideration, we think we are supported, by analogy, by the recent case of Thebeau v. Thebeau, Mo.Sup., 324 S.W.2d 674, 678, wherein the court considered Section 304.017 in connection with

its construction of Section 304.044 which provides that a bus or truck shall not follow within 300 feet of another such vehicle. In that case a passenger in the rear truck was permitted to recover from the driver of that truck upon a hypothesized violation of Section 304.044, the court saying, "We have no doubt that the main purpose of section 304.044 was, as the Maryland court held, to provide sufficient space between trucks and busses to permit lighter vehicles to pass, but we are not persuaded that this was its only purpose. We think it obvious that as a traffic safety regulation it was also intended for the protection of forward trucks and those trucks following, as well as the drivers and passengers therein." See also Isenhour v. McGranighan, 178 Va. 365, 17 S.E.2d 383. Since this case will likely be retried we think we should also express our view that the evidence herein would reasonably support a finding that defendant's car (just prior to the collision) was following the automobile ahead more closely than was reasonably safe and prudent and hence plaintiff made a submissible case on that issue.

■ But defendant says that any error in striking paragraph 4 from the petition was harmless because plaintiff was guilty of contributory negligence as a matter of law and hence could not have submitted his case upon primary negligence in any event. It is said in defendant's brief that "plaintiff was guilty of contributory negligence as a matter of law in standing on the highway for several minutes without looking in the direction from which traffic was coming and in failing to take any other precautions for his own safety, and in parking the truck on the highway in a position of danger or allowing it to be parked there without protest." "In determining this question, we bear in mind that plaintiff's negligence is a jury question, unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a

proximate cause of his injury." Kickham v. Carter, Mo.Sup., 314 S.W.2d 902, 908.

There was evidence to indicate that Kirkwood Road had two lanes for traffic in each direction and that the pickup truck was parked at the east edge of the pavement; that the taillight of the truck was burning; that it was necessary for one working on the spare tire holder to be at the rear of the truck; that during the time the truck had been parked, northbound vehicles in the east lane had been turning to the left and passing in the other lane for northbound traffic, and that the highway was level for a distance of 100 feet south of the point of impact.

■ We have concluded that, under the evidence adduced, plaintiff was not guilty of contributory negligence as a matter of law. The evidence (viewed in the light most favorable to plaintiff) was to the effect that there was ample space for northbound vehicles to pass to the left of the parked truck and that they had been so passing for several minutes before the casualty; that the red taillight was burning and should have been a warning to traffic approaching from the rear. For all practical purposes it was necessary for plaintiff to be at the rear of the truck, facing north, in order to work at the tire carrier. In any event, it would probably have been useless for plaintiff to have kept a lookout to the south because, by the time he could have ascertained that a vehicle was not going to turn to the left, it would likely have been too late for him to have escaped being struck. Under the circumstances of this case the question of contributory negligence, in the event of a primary negligence submission, would be properly left to the jury.

The cases cited by defendant in support of the foregoing contention are Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, House v. Santa Fe Trail Transp. Co., Mo. Sup., 217 S.W.2d 382, Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, and Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21.

These cases are all distinguishable. In the last two the issue of contributory negligence was left to the jury. The first two cases cited are distinguishable upon the facts in a number of respects including the fact that the parked vehicle was not on a four-lane highway. We are not here dealing with the situation that would have been presented in the event the truck had been parked on a highway with only one lane for traffic in each direction.

 Since this case will likely be retried there is one other point which we should discuss briefly as it will probably recur on another trial. Prior to trial plaintiff took the deposition of the defendant. At the trial plaintiff read portions of that deposition as admissions against defendant. The portions so read by plaintiff cover seven and one-half pages of the transcript. After plaintiff had read the parts he desired defendant was permitted, over the objection of plaintiff that they were self-serving, to read certain questions and answers from said deposition which he contended were in explanation of the admissions read by plaintiff. Plaintiff here contends that "the court erred in permitting counsel for defendant to read portions of defendant's deposition as clarifying and explanatory of the admissions against interest in that said portions were self-serving and did not legally explain the adverse admissions."

The court properly permitted defendant to read relevant portions of the deposition which had a bearing upon and tended to explain the testimony plaintiff had read. Southern Bank of Fulton v. Nichols, 202 Mo. 309, 100 S.W. 613. The fact that the testimony may have been self-serving, in the sense that it was favorable to defendant, would not require its exclusion if it were otherwise admissible. 20 Am.Jur., Evidence, Section 551, p. 463. Plaintiff also says the portions read by defendant did not "legally explain the adverse admission." The portions read by both parties cover eleven pages of the transcript. We do not deem it advisable to set out all of that testimony in an effort to demonstrate that the questions and answers read by defendant were properly admitted. It would seem sufficient to state that we have read the testimony in question and have concluded that it was relevant and tended to explain the parts of the deposition read by plaintiff. No error was committed in that regard.

The judgment is reversed and cause remanded for a new trial.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.