**Susan COLEMAN, as Surviving Heir of Ruthie Lacey, Deceased, Respondent/Cross–Appellant,**

v.

**James Darin MERITT, M.D., Respondent,**

and

**W.J. Stoecker, M.D., Appellant/Cross–Respondent.**

**Nos. SD 28678, SD 28680.**

Missouri Court of Appeals, Southern District, Division One.

May 22, 2009.

Petition for Rehearing or Reconsideration and Transfer Denied June 2, 2009.

Application for Transfer Denied Sept. 1, 2009.

---

Kevin J. Davidson and David M. Zevan, Zevan Davidson Farris Stewart, LLC, St. Louis, for Respondent.

Robyn Greifzu Fox, Catherine Vale Jochens, Moser & Marsalek, P.C., Matthew S. Hendricks, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, for Appellant.

DANIEL E. SCOTT, Presiding Judge.

Ruth Lacey had abdomen pain on a Friday morning in 2002. Early that afternoon she saw Dr. James Meritt, who sent her to the hospital in Dexter for a CT scan, after which she went home.

The hospital electronically transmitted Ms. Lacey's CT scan images [1] to Dr. W.J. Stoecker, a Cape Girardeau radiologist who looked for, but saw no free intraperitoneal air which would have indicated a surgical emergency.

The next day, Ms. Lacey was still in pain and had not heard back from any doctor. Unable to reach Dr. Meritt on a Saturday, she and her husband went to the emergency room where doctors discovered a ruptured ulcer. Despite emergency surgery, Mr. Lacey was told that his wife was likely to die, and that an earlier surgery might have saved her. Ms. Lacey passed away soon thereafter.

Susan Coleman ("Plaintiff"), a class 1 wrongful death beneficiary,[2] sued Drs. Meritt and Stoecker, alleging in part that Dr. Meritt failed to follow up on Ms. Lacey, and Dr. Stoecker should have seen free air on the CT scans which would have alerted him to a need for immediate medical action.[3] Dr. Meritt did not answer the petition, nor did he appear or defend at trial.

A jury found each doctor 50% at fault, and awarded $7,500 in economic damages and $1,200,000 in past and future non-economic damages. After deducting the hospital's $10,000 pre-trial settlement, the trial court entered a joint and several judgment against the doctors for $1,197,500. Four months later, the court amended its judgment to "cap" Dr. Stoecker's non-economic damages liability at $608,000 based on then-applicable § 538.210.[4]

Dr. Stoecker appeals, raising four claims of error. Plaintiff cross-appeals the reduction of Dr. Stoecker's liability. We begin with Dr. Stoecker's appeal, grouping and

---

1. According to trial testimony, this process, known as teleradiology, is a widely used and acceptable method of reviewing CT scans.

2. See § 537.080.1(1). Unless otherwise indicated, statutory references are to RSMo (as amended 2002), and rule references are to Missouri Court Rules (2007).

3. She also sued others, but those claims are not at issue in this appeal.

4. Statutes cited in Appeal No. SD28680 have been substantially changed for actions filed since August 28, 2005. See House Bill No. 393, 93rd General Assembly, 1st Regular Session. This case was filed in 2002, and the parties agree that Plaintiff's cross-appeal is governed by chapter 538 provisions now superseded. Thus, that part of our opinion may be of limited interest except to these parties.

addressing his points out of order for more convenient analysis.

## Appeal No. SD28678

*Dr. Beal's Testimony (Points II & III)*

■ Plaintiff's expert, Dr. Beal, opined that Dr. Stoecker breached his standard of care by failing to identify free air on the CT scan. Point II attacks this testimony as "without foundation and not based on sufficient facts in evidence, in that there was insufficient evidence that the free air was visible on the image viewed by Dr. Stoecker on his monitor on April 5." In other words, Dr. Beal testified that free air could be seen on the CT films, but Dr. Stoecker did not make his diagnosis from those films. Rather, he used teleradiology to view digitally transmitted images on his office computer monitor. Citing this difference, Point II asserts that Dr. Beal's standard of care opinion was inadmissible.

We disagree. Plaintiff's and defense experts alike found no indication that Dr. Stoecker received images of poor quality; indeed, the evidence was otherwise. Nor did Dr. Stoecker deny that he viewed images of diagnostic quality.[5] Dr. Stoecker's own expert testified similarly and agreed that "the images showed free air."

Since Dr. Stoecker's own expert (and other evidence) refutes Point II's specific foundational challenge to Dr. Beal's testimony—*i.e.*, "insufficient evidence that the

---

5. Testimony established that a radiologist can make a final diagnosis via teleradiology if he deems the image to be of "diagnostic quality." If not, he issues a preliminary diagnosis pending review of the film. There was no indication that Dr. Stoecker's diagnosis in this case was not final.

6. This verdict director, Instruction No. 7, reads as follows:
   INSTRUCTION NO. 7
   In your verdict you must assess a percentage of fault to Dr. James Darin Meritt,

---

free air was visible on the image viewed by Dr. Stoecker"—we deny this point.

Point III claims no submissible case was made against Dr. Stoecker because "Plaintiff failed to adduce competent and substantial expert testimony that Dr. Stoecker breached the standard of care in failing to recognize free air . . . on his monitor." The supporting argument states that "[f]or the reasons discussed in Point II, *supra*, Dr. Beal's opinion testimony was not substantial evidence on the standard of care because it lacked foundation," and concludes as follows:

> Because Dr. Beal's testimony was the only evidence on liability (i.e., that Dr. Stoecker breached the standard of care), and it was wholly lacking in foundation, the trial court should have sustained Defendant's Motion for Directed Verdict or Motion for Judgment Notwithstanding the Verdict due to failure to make a submissible case. This Court should reverse the judgment in favor of Plaintiff and remand for entry of judgment in favor of Dr. Stoecker.

Point III thus hinges on Point II and fails accordingly.

## *Alleged Instructional Error*
*(Points I & IV)*

■ Plaintiff's verdict director against Dr. Meritt specified only one of several negligent acts that Dr. Meritt admitted by failing to answer Plaintiff's petition.[6]

whether or not defendant Dr. W.J. Stoecker was partially at fault, if you believe:
First, plaintiff Susan Coleman was the daughter of Ruth Lacey, and
Second,
Defendant Dr. James Darin Meritt failed to follow up on Ruth Lacey after sending her for a CT Scan on April 5, 2002.
Third, defendant Dr. James Darin Meritt in any one or more of the respects submitted in paragraph Second was thereby negligent, and

Point I complains that this "improperly limited the basis of imposing liability and allocating fault to Dr. Meritt, thereby prejudicing Dr. Stoecker with respect to his right to a full allocation of fault." We cannot agree.

■ Point I's faulty premise is that Dr. Stoecker, as a co-defendant, can fully claim the "benefit" of Dr. Meritt's default under Plaintiff's petition. A default admits the petition's traversable allegations "constituting the plaintiffs' cause of action and the defendant's liability thereunder." *Sumpter v. J.E. Sieben Const. Co.*, 492 S.W.2d 150, 153 (Mo.App.1973). Dr. Meritt's default thus inured, directly, only to Plaintiff's benefit. Dr. Stoecker filed no cross-claim, so Dr. Meritt did not fail to answer *his* allegations or default as to *him*, and Dr. Stoecker did not offer as evidence any of *Plaintiff's* allegations admitted by Dr. Meritt. Thus, on this record, Dr. Stoecker cannot cast himself into Plaintiff's position to take advantage of or assert any right due to Dr. Meritt's default. *See Stevens v. Cross Abbott Co.*, 129 Vt. 538, 283 A.2d 249, 252 (1971).

■ Dr. Stoecker's desire to manage Plaintiff's case against Dr. Meritt conflicts with Plaintiff's right to submit any pleaded theory supported by the trial evidence, and if so supported, any MAI–compliant verdict director:

A party is entitled to choose the theory of recovery on which to submit his case to the jury. *See Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 191 (Mo.App. E.D.1982); *Certa v. Associated Building Center, Inc.*, 560 S.W.2d 593, 596 (Mo.App.1977). And, a party is enti-

tled to a verdict-directing instruction predicated on his theory of the case, if that theory is supported by the evidence. *Williams v. Christian*, 520 S.W.2d 139, 141 (Mo.App.1974); *see also Yoos*, 645 S.W.2d at 191; *Certa*, 560 S.W.2d at 596.

*Adams v. Badgett*, 114 S.W.3d 432, 436 (Mo.App.2003). "Even in a situation where the evidence could support two theories of recovery to which two separate MAI instructions would be applicable, the plaintiff has the right to elect the theory on which to submit her case and to select the appropriate MAI verdict director." *Nagaragadde v. Pandurangi*, 216 S.W.3d 241, 245 (Mo.App.2007).[7]

Ignoring these principles, Point I cites and relies almost exclusively on *Osborn v. Gibson*, 309 S.W.2d 15 (Mo.App.1958), which we need not parse because it arose under a different liability and procedural regime. Prior to *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), "there was no opportunity to consider non-contractual indemnity or contribution between defendants. *Whitehead & Kales* ... established contribution by impleader or cross-claims between joint tortfeasors based on their relative fault." Michael J. Beal, Note, *In the Interest of Fairness and Justice: The Right to Indemnity and Contribution Among Sellers in Strict Liability Cases*, 56 UMKC L.Rev. 747, 750 (1988). Since 1978, it has been "permissible to file a cross-claim to seek apportionment of fault among joint tortfeasors," 15 Michael D. Murray, MISSOURI PRACTICE: CIVIL RULES PRACTICE § 55.32–2 (2008 ed.) and thus

Fourth, such negligence directly caused or directly contributed to cause the death of Ruth Lacey.

7. *See also Certa*, 560 S.W.2d at 596 ("While plaintiffs did include in their petition an allegation that defendant had been negligent in

stopping suddenly and without adequate warning, they did not have to rely on this theory of negligence in the submission of the case to the jury, and indeed, they chose not to.").

limit a plaintiff's ability to saddle one defendant with a co-defendant's excess liability. *Whitehead & Kales,* 566 S.W.2d at 473.

*Whitehead & Kales* renders *Osborn* inapposite. Dr. Stoecker chose not to cross-claim. Having made this tactical decision, he could not fairly complain that Plaintiff or the trial court should have better protected him, or promoted his contribution interests by changing Plaintiff's theory of her case. Point I fails.

■■ Point IV seeks plain error review of the damage instruction.[8] Plain error rarely is used in civil cases (*Martha's Hands, LLC v. Starrs,* 208 S.W.3d 309, 315 (Mo.App.2006)), and even in criminal cases, rarely for instructional error. *See, e.g., State v. Robertson,* 182 S.W.3d 747, 757 (Mo.App.2006); *State v. Shockley,* 98 S.W.3d 885, 891 (Mo.App.2003). There is no reason to invoke it here.

Not only did Dr. Stoecker fail to preserve this claim as required by Rule 70.03, but the following exchange occurred near the end of the instruction conference:

THE COURT: "[Defense counsel], your objection was to that one instruction [No. 7, see Point I above], and I think you made a record on that. Do you wish to make further record on the instruction packet?"

DEFENSE COUNSEL: "No, Your Honor. Besides the objection already made, that is all I have at this time, Judge."

This belies any basis for plain error relief, at least in these circumstances. *See Flood ex rel. Oakley v. Holzwarth,* 182 S.W.3d 673, 679 (Mo.App.2005). "[W]e cannot say that the trial court erred in taking Defendants at their word when they said 'no' when asked if they had any objection to any of the jury instructions." *Id.*

### Appeal No. SD28680

■ As previously noted, the non-economic damages totaled $1,200,000; both doctors were equally at fault, and the trial court initially entered a joint and several judgment under then-applicable § 538.230.2:

The court shall determine the award of damages ... and enter judgment against each party liable on the basis of the rules of joint and several liability.... [A]ny defendant ... shall be jointly liable only with those defendants whose apportioned percentage of fault is equal to or less than such defendant.

Later, the court amended the judgment to cap Dr. Stoecker's non-economic damages liability at $608,000, based on § 538.210.1:

In any action against a health care provider for damages for personal injury or death arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than [$608,000][9] per occurrence for non-

---

8. The damage instruction, Instruction No. 6, reads as follows:

INSTRUCTION NO. 6

If you find in favor of plaintiff, then you must award plaintiff such sum as will fairly and justly compensate plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future that the death directly caused or directly contributed to cause. You must state such total amount of plaintiffs' damages in your verdict, and you must itemize these total damages by the categories set forth in the verdict form.

Any damages you award must be itemized by the categories set forth in the verdict form.

You must not consider grief or bereavement suffered by reason of the death.

9. Originally $350,000, this cap was adjusted annually for inflation. § 538.210.4. The parties agree that $608,000 was the correct cap figure at the time of trial.

economic damages from any one defendant as defendant is defined in subsection 2 of this section.

We agree with Plaintiff that the trial court thus erred.

Dr. Stoecker argues that the jury's verdict triggered both of the above-quoted statutes; one of them must take precedence; and the statutory cap should do so. As we read the cases, this is a false dilemma and the damage cap never comes into play.

The § 538.210.1 cap applies "per occurrence" (*i.e.*, to each wrongful act sued upon), and a plaintiff can recover up to one cap for each occurrence. *See Cook v. Newman*, 142 S.W.3d 880, 889 (Mo.App. 2004); *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 571 (Mo.App.2002). Here, there are two doctors; two occurrences; 50–50 fault; and $1,200,000 non-economic damages. The liability per occurrence is $600,000, which does not reach or trigger the statutory cap of $608,000 per occurrence.

Since the doctors were equally at fault, they are jointly and severally liable per § 538.230.2. The non-economic damages exceed $608,000 in the aggregate, but not per occurrence. Thus, § 538.210.1's cap is not implicated and Plaintiff can recover the entire judgment from either doctor.[10]

## Conclusion

We reverse that part of the judgment limiting Dr. Stoecker's joint and several

liability to $615,500 ($7,500 economic damages, plus $608,000 non-economic damages) and remand for entry of a judgment consistent with this opinion. In all other respects, the judgment is affirmed.

BARNEY and BATES, JJ., concur.

---

10. Dr. Stoecker's contrary arguments are inconsistent with *Scott*, *Cook*, and *Lindquist v. Mid America Orthopaedic Surgery, Inc.*, 224 S.W.3d 593 (Mo. banc 2007). *Scott* shows that one defendant can be liable for two caps based on two occurrences. 70 S.W.3d at 564. *Cook* illustrates one defendant's liability for multiple caps based on other defendants' fault if another legal principle so provides. 142 S.W.3d at 895. In *Cook*, that principle was respondeat superior; here it is joint and sev-

eral liability as expressly preserved and imposed by § 538.230.2. *Lindquist* ordered one health care provider's 5% liability ($272,900, part of which represented non-economic damages) to be transferred, under § 538.230.2 joint and several liability, to a 40%-responsible provider whose non-economic damages liability already exceeded one statutory cap. 224 S.W.3d at 595–96; *see also Lindquist v. Scott Radiological Group, Inc.*, 168 S.W.3d 635, 641–42 (Mo.App.2005).