

# Missouri Court of Appeals

## Southern District

### Division Two

NORA BETH FAIRBANKS,    )
                )
    Plaintiff-Appellant,    )
                )
v.                )    No. SD35127
                )    Filed: May 12, 2020
CHRISTOPHER L. HENDRICKS,    )
                )
    Defendant-Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Circuit Judge

**<u>REVERSED AND REMANDED</u>**

Nora Fairbanks (Plaintiff) sued Christopher Hendricks (Defendant) to recover damages for injuries Plaintiff sustained in a multi-vehicle collision. A jury found in Defendant's favor. On appeal, Plaintiff presents three points of alleged instructional error for decision. Point 1 contends the trial court erred by refusing to give Instruction A, a verdict director which included a "following too closely" disjunctive specification on negligence in the first paragraph. Point 2 contends the trial court erred by refusing to give Instruction D, a verdict director which included a "moving to the left when it was not safe to do so" disjunctive specification on negligence in the first paragraph. Point 3 contends the trial court erred by refusing to give a withdrawal instruction regarding the issue of

alcohol intoxication. Because Plaintiff's first point has merit, we reverse the judgment and remand for further proceedings without reaching Points 2 and 3.

*Procedural Background*

Plaintiff filed a personal injury action against Defendant in February 2007. The second-amended petition alleged that: (1) on July 24, 2002, Defendant was driving east in the outside lane of Highway 60; (2) Defendant suddenly changed lanes and collided with a vehicle being driven by Lila Smith (Smith) in the left-hand, eastbound lane of Highway 60; (3) the collision caused Smith to lose control, cross the median and collide with Plaintiff's vehicle traveling west on Highway 60.[1] The petition included an allegation that Defendant was following a slower-moving minivan too closely in his lane of traffic and struck Smith's vehicle while attempting to pass the minivan.

A four-day jury trial was held in May 2017. During the instruction conference, the trial court announced that it had prepared Instruction No. 6, a verdict-directing instruction that it was prepared to give over both parties' objections. Instruction No. 6 hypothesized in paragraph First that "either: defendant failed to keep a careful lookout, or defendant moved his automobile from his lane of traffic when it was not safe to do so[.]" Plaintiff's counsel tendered verdict-directing Instruction A, which included both of the above-mentioned specifications of negligence and an additional disjunctive specification of negligence in the first paragraph hypothesizing that "defendant was following the minivan too closely[.]" Defense counsel objected to Instruction A on the ground that "it has no

---

[1] Brass Leasing, Inc. (BLI), which employed Defendant, also was named as a party-defendant in the petition. Plaintiff's claim against BLI was voluntarily dismissed prior to trial.

causal relation to the incident. It's just not germane to the negligent conduct." The trial court ruled that "there is no purported causal connection between the distance by which the defendant was following the minivan and the incidents that ultimately caused damage to the plaintiff." The court refused to submit Instruction A.

The jury returned an 11-1 verdict in favor of Defendant. After entry of a judgment in Defendant's favor, this appeal followed.

*Point 1*

*Standard of Review*

Plaintiff's first point contends the trial court erred by refusing to give Instruction A. "Whether a jury was properly instructed is a question of law that this Court reviews *de novo*." ***Bach v. Winfield-Foley Fire Prot. Dist.***, 257 S.W.3d 605, 608 (Mo. banc 2008). As explained in ***Marion v. Marcus***, 199 S.W.3d 887 (Mo. App. 2006):

> For disjunctive verdict directing instructions to be appropriate, each disjunctive alternative instruction proffered by a party must be supported by substantial evidence. *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo.App. W.D.2001). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Id.*

***Marion***, 199 S.W.3d at 894; *see also* ***Hayes v. Price***, 313 S.W.3d 645, 650 (Mo. banc 2010) (an issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue). A party is entitled to submit an instruction upon any theory supported by the evidence. *See* ***Bach***, 257 S.W.3d at 608; ***Oldaker v. Peters***, 817 S.W.2d 245, 251-52 (Mo. banc 1991). "The refusal to give a verdict director supported by the law and the evidence is not a matter for the trial court's discretion." ***Marion***, 199 S.W.3d at 892; *see* ***Mitchell v. Evans***, 284 S.W.3d 591, 594 (Mo. App. 2008). If the trial court's refusal to give a tendered instruction resulted in prejudice

3

and materially affected the merits of the action, we must reverse the judgment. ***Cluck v. Union Pac. R. Co.***, 367 S.W.3d 25, 32 (Mo. banc 2012).

*Summary of the Favorable Evidence and Inferences*

To decide whether the trial court erred by refusing Plaintiff's tendered verdict-directing instruction, we must view the evidence and inferences in the light most favorable to giving the instruction. *See Hayes*, 313 S.W.3d at 650; ***Wampler v. Speake***, 479 S.W.3d 771, 772 (Mo. App. 2016). "[W]e disregard evidence and inferences to the contrary." ***Bradford v. BJC Corp. Health Services***, 200 S.W.3d 173, 179 (Mo. App. 2006); ***Myers v. Farm Bureau Town & Country Ins. Co.***, 345 S.W.3d 341, 348 (Mo. App. 2011). Our recitation of the favorable evidence and inferences also adheres to the principle that "a jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part." ***Meyers v. Southern Builders, Inc.***, 7 S.W.3d 507, 514 (Mo. App. 1999).

At approximately 5:45 a.m. on July 24, 2002, Plaintiff was driving west on Highway 60 in her 2000 Ford Mustang. The speed limit was 60 miles per hour. She was heading to work at Mercy Hospital in Springfield and planned to take the Glenstone exit to get there. She was in the left-hand lane to avoid merging traffic from Highway 65. The weather was clear, and traffic was very light. Plaintiff was driving approximately 60 miles per hour.

Around that same time, Defendant was approaching from the opposite direction. He was headed east on Highway 60 in a 2002 Chevrolet Trailblazer. The Trailblazer was in the right-hand, outside lane about one-quarter of a mile ahead of a vehicle being driven by Sam Lindley (Lindley). Lindley had a good view of the Trailblazer, which had its

4

headlights and taillights illuminated. Lindley's vehicle was going about 60 miles per hour, and it was travelling at approximately the same speed as the Trailblazer.

Lindley's vehicle was passed by a gray 1995 Chrysler Sebring, driven by Smith. The Sebring was in the left-hand passing lane traveling at 70 miles per hour. The Sebring's headlights and taillights were illuminated. The vehicle was not swerving or weaving in its lane.

Lindley could see the Trailblazer coming up behind a minivan that was in front of it in the right-hand outside lane. The Trailblazer was traveling at 62 miles per hour. The minivan was going 50 miles per hour. The Trailblazer got within two car-lengths of the minivan. The Trailblazer was still gaining on the minivan. Lindley did not see any brake lights or turn signals illuminate on the Trailblazer. At that point, the Trailblazer started to move to the left side of its lane, toward the passing lane. The Sebring was in the passing lane beside the Trailblazer. The Sebring did not leave its traffic lane or do anything unusual until there was side contact with the Trailblazer.

The Trailblazer moved to the left and seemed to be moving to the center of the two lanes more than the Sebring did. The Sebring and Trailblazer bumped each other, and the brakelights on the Trailblazer illuminated. Defendant did not see Smith's Sebring until impact. Defendant felt, but did not see, the impact.[2] The Trailblazer moved back into the right-hand outside lane. The Sebring suddenly started skidding to the left and crossed the median.

---

[2] As a result of that collision, the Trailblazer sustained damage that cost $3,732.49 to repair. Photographs show that the impact areas on the Trailblazer were the left front quarter panel just behind the left front tire, the lower part of the driver's door, and the passenger door on the driver's side.

Plaintiff "saw some lights kind of quiver a little bit on the other side[.]" Suddenly, the Sebring, surrounded by dust, was coming at her from the median. Plaintiff "did a knee jerk to the left turn," braked, and collided with the Sebring in the westbound lanes. Smith was killed in the collision.[3]

Police Officer Robert Baker (Officer Baker) arrived at the scene around 6:00 a.m. He saw the Trailblazer parked to the right. There were 239 feet of skid marks left by the Sebring, starting in the eastbound lane, crossing the median, and leading to the point of impact between the Sebring and Mustang. There was no indication that Smith had been operating the Sebring erratically. Another officer found a piece of the Sebring in the front portion of the driver's side, rear wheel well of the Trailblazer. Officer Baker interviewed Defendant, who said he didn't see the Sebring but did make contact with it. Defendant did not say the Sebring had come over and hit the Trailblazer. Defendant did not mention anything about approaching a minivan. Officer Baker found nothing at the scene that would have blocked Defendant's view of the Sebring as it approached from behind him. Defendant had a clear line of sight to his back, if he had been looking. During Officer Baker's investigation, he did not discover anything that had happened, prior to the impact with the Trailblazer, to cause Smith to lose control of the Sebring.

Defendant was interviewed a second time on July 25, 2002, one day after the collision. During the second interview, Defendant said he couldn't remember whether he was passing or changing lanes when he came in contact with the Sebring. Defendant did mention this time that he was approaching a minivan that was going slower than he was.

---

[3] Forensic testing of Smith's blood after her death showed her blood-alcohol level was .197%.

At trial, Dr. Bruno Schmidt (Dr. Schmidt) testified as an expert in accident reconstruction. Dr. Schmidt had reviewed Lindley's statement that: (1) Defendant was gaining on a slower-moving minivan and had approached within a couple of car-lengths of it; (2) he did not slow down or apply his brakes prior to the impact with the Sebring; (3) the Trailblazer moved to the left as it approached the minivan; (4) the Sebring was steady in its lane and not moving side to side; (5) there was contact between the Trailblazer and Sebring; and (6) after that contact, the Sebring lost control and skidded through the median. Dr. Schmidt opined that these facts are characteristic of a "PIT maneuver" performed by law enforcement:

> A. …. If the patrol vehicle just moves over and just very slightly tags or comes against the side of that offending vehicle, it can cause a loss of control of the vehicle and will make the vehicle start to rotate and go off the roadway. And it's called the PIT maneuver, precision – I never remember what it stands for, but it's a technique to make that other vehicle lose control. ….
>
> Q. And, now, we're not saying in this case that [Defendant] intentionally did a PIT maneuver, but could it be done accidentally?
>
> A. Yes. If the motion was similar to what a law enforcement person would do in a PIT maneuver, then it would have a similar effect.

Dr. Schmidt also opined that Lindley's testimony about Smith losing control of the Sebring about one second after impact would be consistent with an accidental PIT maneuver. According to Dr. Schmidt, "a small amount of side contact can cause loss of control."

*Analysis*

Plaintiff's first point challenges the trial court's refusal to give Instruction A, which included a "following too closely" disjunctive specification of negligence in paragraph First. Plaintiff contends there was substantial evidence to support the giving of a following-too-closely theory to the jury. We agree.

7

Defendant was required to exercise the highest degree of care in operating his vehicle. *See* MAI 11.01 (defining this phrase to mean "that degree of care that a very careful and prudent person would use under the same or similar circumstances"); § 304.012.1.[4] Plaintiff's following-too-closely specification of negligence was patterned after MAI 17.09 (2012, 7th ed). The Notes on Use to MAI 17.09 state, in relevant part, that the following-too-closely instruction "is an optional submission of negligence which may be used as … one of the alternate submissions in paragraph First of Verdict Directing 17.02." *Id*. The 1996 Committee Comment B states that "[h]ypothesizing failure of defendant to maintain this distance, negligence, causation and injury, is the proper basis for a verdict directing instruction." *Id*. MAI 17.09 is based upon § 304.017. In relevant part, this statute states:

> The driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway. Vehicles being driven upon any roadway … shall be so operated … so as to allow sufficient space between each such vehicle or combination of vehicles as to enable any other vehicle to overtake or pass such vehicles in safety.

§ 304.017.1; *see also* MAI 17.09 Committee Comment C; **Smith v. Quallen**, 27 S.W.3d 845, 847 (Mo. App. 2000) (MAI 17.09 tracks § 304.017).

The scope of this statute was explained by our Supreme Court in **Binion v. Armentrout**, 333 S.W.2d 87 (Mo. 1960). There, the plaintiff was engaged in changing a flat tire on a truck parked in the right-hand, outside lane of a four-lane highway. He was injured when he was struck by the defendant's northbound car. The defendant had been driving north about two car-lengths behind another vehicle. That vehicle swerved to the

---

[4] All references to statutes are to RSMo (2000).

left and missed plaintiff. The defendant continued forward and struck plaintiff. *Id*. at 88-89. At trial, plaintiff wanted to submit a following-too-closely specification of negligence, based upon § 304.017. The trial court refused to submit that specification after ruling that the statute did not apply to plaintiff, who was a pedestrian when he was struck. *Id*. at 89-90. Our Supreme Court held that the trial court's ruling was erroneous:

> It is defendant's contention (with which the trial court apparently agreed) that the foregoing statute was not enacted for the benefit and protection of all classes of vehicular traffic upon the highways nor for the protection of any pedestrians. It is not made clear in his brief as to the vehicles he believes the statute was intended to protect, but he does clearly contend that it was not enacted for the protection of a vehicle parked on the highway for the purpose of replacing a flat tire or the persons working around said vehicle in making that replacement. We see no reasonable basis for that position. Could it be reasonably said that the statute was designed for the sole protection of the forward vehicle or vehicles following, or parked vehicles, or a passing vehicle (and occupants of said vehicles), or pedestrians? We have concluded that said section was enacted for the protection of every person or vehicle which would reasonably be afforded a measure of protection by the enforcement of the terms thereof. Nothing contained in the section would indicate any intention to restrict its application. "The purpose of statutes regulating and effecting automobile traffic on the highways is the promotion of the safety of the public." *Dinger v. Burnham*, 360 Mo. 465, 228 S.W.2d 696, 699. We accordingly hold that, under the circumstances here presented, plaintiff was entitled to allege and (if the evidence so warranted) submit by an appropriate instruction defendant's violation of Section 304.017 as a basis for recovery herein.

*Binion*, 333 S.W.2d at 90.

In *Ramsey v. Vance*, 622 S.W.2d 774 (Mo. App. 1981), a driver, Gammill, was slowly driving south in the right-hand, outside lane, signaling to make a right turn. Plaintiff Ramsey was driving a motorcycle about 10 feet behind Gammill's vehicle. Defendant Vance, who had been driving north, was stopped in the center turn lane. Vance could not see Ramsey's motorcycle and began his left turn. Ramsey accelerated rapidly, pulled around Gammill and collided with Vance's vehicle. *Id*. at 776. At trial, Vance submitted

9

a contributory negligence instruction hypothesizing that Ramsey was following the Gammill car too closely. On appeal, Ramsey argued that § 304.017 only applies to vehicles traveling in the same direction at substantially the same speed. *Id*. at 777. The appellate court rejected that argument because:

> Our Supreme Court has held that this section "was enacted for the protection of every person or vehicle which would reasonably be afforded protection by the enforcement of the terms thereof." *Binion v. Armentrout*, 333 S.W.2d 87, 90 (Mo. 1960). See also *Pyles v. Roth*, 421 S.W.2d 261, 262 (Mo. 1967). Thus, the "following too closely" instruction's application is not limited only to rear-end collision situations.

*Ramsey*, 622 S.W.2d at 778.

Viewing the evidence and inferences in the light most favorable to the submission, we agree with Plaintiff that the trial court should have submitted the Instruction A verdict-directing instruction to the jury. Based upon the analysis of § 304.017.1 in *Binion* and *Ramsey*, Smith was within the scope of the protection of that statute as she was passing Defendant's Trailblazer. "An instruction for following too closely may be given if sufficient evidence exists for the jury to determine that the driver was following another vehicle more closely than was reasonably safe and prudent." *O'Neal v. Pipes Enterprises, Inc.*, 930 S.W.2d 416, 425 (Mo. App. 1995). We hold that the evidence here was sufficient for the jury to reasonably infer that Defendant was following the minivan more closely than was reasonably safe.

The minivan was traveling approximately 12 miles per hour slower than Defendant's Trailblazer. While gaining on the minivan, Defendant approached within two car-lengths of that vehicle. If Defendant did not take some action, he would have run into the minivan. Defendant did not slow down, brake or signal his intention to pass the minivan. Smith's Sebring was in the passing lane, beside the Trailblazer. The Trailblazer

moved to the left and bumped the Sebring, causing Smith to lose control and skid into the median. Defendant did not brake until after he made contact with the Sebring. The Sebring skidded through the median and collided with Plaintiff's Mustang. Plaintiff's accident reconstruction expert, Dr. Schmidt, testified that "a small amount of side contact can cause loss of control." Defendant's close approach to the minivan and his move to the left to go around it are what set the collision in motion.

We disagree with the trial court that the following-too-closely instruction could not be given due to a lack of causation. "Causation may be shown through expert testimony, circumstantial evidence or favorable inferences drawn from all the evidence." *Ploch v. Hamai*, 213 S.W.3d 135, 141 (Mo. App. 2006); *see Honey v. Barnes Hosp.*, 708 S.W.2d 686, 694 (Mo. App. 1986). In *Smith v. Quallen*, 27 S.W.3d 845 (Mo. App. 2000), the plaintiff argued that a comparative-fault instruction submitting following too closely was not supported by evidence of causation. The eastern district of this Court rejected that argument:

> Plaintiff argues, nonetheless, that there is no evidence that her negligence in following too closely caused the accident. However, direct proof of causation is not required; a jury may infer causation from the circumstances. *Derrick v. Norton,* 983 S.W.2d 529, 532 (Mo. App. E.D. 1998). In the absence of compelling evidence establishing the absence of causation, the causation question is for the jury. *Id.* at 533.

*Smith*, 27 S.W.3d at 848. We reach the same conclusion here.

One of Plaintiff's theories of negligence was that Defendant approached the slower minivan too closely and had to make an evasive maneuver that caused him to bump the Sebring and cause the collision that injured Plaintiff. Conduct can be the proximate cause of any harm which is its natural and probable result. *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo. App. 1996); *see also Meyer v. City of Walnut Grove*, 505 S.W.3d 331, 336

11

(Mo. App. 2016) (proximate cause must be decided on the specific facts of each case by evaluating whether or not the injury is a natural and probable consequence of a defendant's negligence). Based upon the foregoing evidence, a reasonable juror could find that Defendant's conduct caused the Sebring to lose control at 70 miles per hour and brought that vehicle into collision with Plaintiff's Mustang, which is sufficient proof of causation. *See Lampe v. Taylor*, 338 S.W.3d 350, 357 (Mo. App. 2011) (causation is normally decided by the fact finder).

What role, if any, Smith's intoxication played in the crash also is a factual question for the jury to resolve. "The question of causation between concurrent negligent acts is an issue for the jury to determine. The determination of proximate cause is dependent upon the particular facts of each case and is generally an issue reserved for the trier of fact." *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 856 (Mo. App. 2007); *see also Linton v. Mo. Hwy. & Transp. Comm'n*, 980 S.W.2d 4, 9 (Mo. App. 1998). A defendant's negligence does not need to be the sole cause of the injury, but rather need only be one of the efficient causes thereof without which the injury would not have occurred. *Vintilla v. Drassen*, 52 S.W.3d 28, 41 (Mo. App. 2001). The trier of fact normally decides causation, particularly where reasonable minds could differ as to causation based upon the facts of the case. *Robinson v. Mo. State Hwy. and Transp. Comm'n*, 24 S.W.3d 67, 77 (Mo. App. 2000); *see Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 722 (Mo. App. 2015).

Instruction A sought to submit Plaintiff's following-too-closely theory to the jury, for which we conclude there was legal and factual support. A plaintiff is entitled to choose the theory of recovery on which to submit his case to the jury as long as there is sufficient

evidence to support him.  ***Coleman v. Meritt***, 292 S.W.3d 339, 343 (Mo. App. 2009).

Additionally, a party is entitled to a verdict-directing instruction predicated on its theory of

the case, if that theory is supported by substantial evidence.  ***Id***.  Therefore, the trial court

erred by refusing Instruction A.  That error was prejudicial because Plaintiff was deprived

of a possible avenue for the jury to find in her favor.  *See **Wampler***, 479 S.W.3d at 776.

Plaintiff's first point is granted.[5]

The trial court's judgment is reversed, and the case is remanded for a new trial on

all issues.

JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR

---

[5] Because our disposition of Point 1 requires reversal and remand, it is unnecessary and inadvisable for us to reach Points 2 and 3.  On retrial, the evidence presented, objections made, instructions offered, and rulings issued may be different.  *See **State v. Jackson***, 353 S.W.3d 657, 661 (Mo. App. 2011).  The court will have the benefit of the parties' research contained in their briefs here, should the issues in Points 2 and 3 arise again.  *See **id***.